[Crim. No. 8064. Second Dist., Div. Two. Dec. 12, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CHRISTINE SANDRA RAY et al., Defendants and Appellants.

No appearance for either party.

ASHBURN, J.—James Lee Moore, Christine Sandra Ray, Barbara Ruth Bush and Johnnie Stigall, Jr., were convicted of felony murder committed in the course of an attempted robbery, and each of them was sentenced to life imprisonment. Moore and Ray appeal. The four defendants were

tried together and the appeals of Moore and Ray are in this court upon a single transcript.

Moore was represented at the trial by the public defender who, pursuant to the discretion vested in him by section 27706, subdivision (a), Government Code, elected not to prosecute an appeal in his behalf.[1] Defendant Ray had private counsel throughout the trial. Both of said defendants requested appointment by this court of counsel to represent them on appeal. This we did. Counsel so appointed reported that there was no discernible merit in the appeals and requested to be relieved. It was so ordered and the appeals were submitted upon the merits. A careful examination of the record confirms the opinion of counsel that there is no merit in either appeal.

Under the management of "Lawyer" Dennis (who, as the transcript indicates, was not a lawyer in fact but had had that name conferred upon him by his parents or himself),[2] the four defendants under an advance agreement between themselves (conspiracy) entered upon an attempt to rob one James C. Stevens ("Baby Boy"),[3] and in the attempt to perpetrate that crime Johnnie Stigall shot and killed the victim, Stevens. Penal Code section 189 provides: "All murder . . . which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree."

The rules governing a case such as this are stated in *People* v. *Buono,* 191 Cal.App.2d 203 [12 Cal.Rptr. 604], which was also a murder committed in an attempt to rob the victim. " ' 'Common design is the essence of a conspiracy and the crime can be committed whether the parties comprehend

---

[1] Gov. Code, section 27706, subdivision (a): ". . . The public defender . . . shall prosecute all appeals to a higher court or courts of any person who has been convicted, where, in his opinion, the appeal will or might reasonably be expected to result in the reversal or modification of the judgment of conviction."

[2] "Lawyer" Dennis adopted a contingent fee arrangement of his own. If the persons given the job of robbery accomplished it they got half the proceeds to divide among themselves and Dennis the other half, as if he were a lawful claimant to the victim's money; if no success, no division or compensation.

[3] Nicknames were common in the circle in which defendants moved. Barbara Ruth Bush was known as "Bobbie," James Lee Moore as "Boogie Woogie" and Christine Ray's brother, John Wesley Hayes, as "Baby Ray."

its entire scope, whether they act in separate groups or together, by the same or different means known or unknown to them, if their actions are consistently leading to the same unlawful result. . . . ▪ Any joint action on a material point or collocation of independent but conspiring acts by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment; and one competent witness will suffice to prove cooperation of an individual conspirator.' [Citations.]'' (P. 215.) ▪ ''It is important here to keep in mind the familiar rule that the corroboration required by Penal Code, section 1111 does not include the corpus delicti and is confined to the matter of connection of the individual defendant with the crime. 'The only corroboration necessary for the evidence of an accomplice under the statute is that which tends to connect the defendant with the commission of the crime, not evidence of the corpus delicti. [Citations.] ▪ The corroborative evidence may be slight and entitled to little consideration when standing alone. [Citation.] Defendant's own admissions are sufficient corroboration. [Citation.] Finally, corroborative evidence may be circumstantial. [Citation.]' [Citation.] These rules are applicable to conspiracy as well as any other crime.'' (Pp. 215-216.) ▪ '' 'Section 1111 of the Penal Code does not require that an accomplice be corroborated as to every fact to which he testified but only that the corroborative evidence tend to connect defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth.' *(People* v. *Simpson,* 43 Cal.2d 553, 563 [275 P.2d 31].)'' (P. 217.) ▪ ''The same evidence which connects each of the appellants with the conspiracy and its attempted robbery connects them with the murder. (25 Cal.Jur.2d § 84, p. 590.) ▪ The murder needs no further or other corroboration. *People* v. *Martin,* 12 Cal.2d 466, 472 [85 P.2d 880] : 'It is, of course, the well-settled law in California that if a human being is killed by any one of several persons jointly engaged at the time of such killing in the perpetration of or an attempt to perpetrate the crime of robbery, whether such killing is intentional or unintentional, or accidental, each and all of such persons so jointly engaged in the perpetration of, or attempt to perpetrate such crime of robbery, are guilty of murder of the first degree.' *People* v. *Waller,* 14 Cal.2d 693, 703 [96 P.2d 344] : 'It is well

established, however, that if a homicide is committed by one of several confederates while engaged in perpetrating the crime of robbery in furtherance of a common purpose, the person or persons engaged with him in the perpetration of the robbery but who did not actually do the killing, are as accountable to the law as though their own hands had intentionally fired the fatal shot or given the fatal blow, and such killing is murder of the first degree. The jury has no option but to return a verdict of murder of the first degree whether the killing was intentionally or accidentally done, and it is proper so to instruct the jury.' To same effect see *People* v. *Miller,* 37 Cal.2d 801, 805 [236 P.2d 137]. Proof of defendant's connection with the conspiracy to rob connects him as a matter of law with the attempt to rob and the ensuing murder.'' (P. 222.)

*People* v. *Simpson,* 43 Cal.2d 553, 563 [275 P.2d 31]: ''Section 1111 of the Penal Code does not require that an accomplice be corroborated as to every fact to which he testified but only that the corroborative evidence tend to connect defendant with the commission of the crime in such a way as reasonably may satisfy a jury that the accomplice is telling the truth [citations]. Proof of the elements of the crime, as contrasted with proof of the connection of defendant with the commission thereof, may rest upon the uncorroborated testimony of an accomplice [citations].''

*People* v. *Chavez,* 37 Cal.2d 656, 669 [234 P.2d 632] : ''The law of this state has never required strict proof of a strict causal relationship between the felony and the homicide. The statute was adopted for the protection of the community and its residents, not for the benefit of the lawbreaker, and this court has viewed it as obviating the necessity for, rather than requiring, any technical inquiry concerning whether there has been a completion, abandonment, or desistence of the felony before the homicide was completed.'' See also *People* v. *Albritton,* 110 Cal.App. 188, 193 [294 P.76].

''Lawyer'' Dennis having staked out the victim of a contemplated robbery apparently selected defendant Stigall (twice previously convicted of felony) as his lieutenant to fill a quota of four, including two women, to execute his plan. When defendants Ray and Bush expressed disinclination to join, he seemed to bring them around by telling ''about the colored people not ever getting anywhere, when somebody

lays something in their lap, they don't know how to accept it.'' Defendant Ray agreed to go along if Moore did, and so both of them joined the conspiracy, as did Barbara Bush. Dennis guided the four defendants to the residence of Stevens, giving his gun to Barbara on the way. Stevens was said to be at home and drunk, also to have in the house a sum of $1,600. Barbara and Christine were to effect entrance by pretending to be applicants for work as waitresses at cafés or hot dog stands managed by Stevens, and were to leave the door ajar as they entered. They did accomplish this and someone left the door slightly open. In a few minutes defendant Stigall and Moore arrived. Stevens was then in the bedroom sitting on the bed. Christine and Barbara were there too. Barbara stepped into the other room, found Stigall and Moore there and handed the gun to Stigall, saying she could not do it, the man looked so pitiful. Moore was armed with a tire iron which was wrapped with a piece of cloth so that any blow he struck the victim would not injure him too severely. All three of them entered the bedroom, the two men having handkerchiefs over the lower part of the face, and Stigall said, ''this is a stickup. We are not playing.'' Stevens, a tall heavy man, arose from his seat laughing as he did so and as he saw the four robbers, all of them less than 30 years of age. Ray said in her statement to the police that ''he got up and started laughing, I guess, because they looked like a couple of teenagers.'' But when Stevens saw the gun pointed at him he began to call for help. Moore swung wildly at Stevens with the tire iron but was too far away to land a blow. Stigall fired a shot through the wall to scare Stevens but Moore was the one that experienced fear. He started forthwith to run out the door. As he did so Stevens fired in his direction but did not hit him. Stevens also grabbed a pillow and threw it in Stigall's face, whereupon his gun went off and Stevens was hit in the neck, inflicting a wound that caused his death. By the time this last shot was fired Moore was well on his way down the street, going so fast that he ran by the car in which they had arrived. Stigall decided it was time to get out of there. Christine, who had been on the sidelines, was the last to leave. She picked up Stevens' gun and took it with her. Barbara having started, returned to look at Stevens to see the extent of his injuries. But all three of them left promptly and pondered methods of avoiding the law. ''Lawyer'' Dennis having disappeared completely, Stigall took charge as adviser

of the group, particularly as to what each of them should say to the police.

In due course all were arrested and each of the four defendants made a confession which was tape recorded, transcribed, later read, corrected and signed by the proper defendant. The statements were voluntary, not induced by threat or promise or other improper means. Each of them contained admissions of facts which constituted a confession of the essential elements of the crime. Defendant Ray said in her statement: "Q. Now, prior to this, didn't you discuss with Bobbie and Johnnie and Boogie about going in there and robbing Baby Boy? Wasn't that the purpose of going in there? A. Yes, that was the purpose." Moore: "Q. Getting back to the conversation just prior to going in there, you did talk about going in there to rob Baby Boy, is that right? A. That's right, yeah. Q. And you didn't plan on any fight or anything else? A. No, sir. Q. Strictly for the robbery? A. Strictly for the robbery."

While each of these statements was offered and received against the signatory defendant alone, they were followed by defense testimony of all defendants except Moore, who rested without producing any evidence. This testimony was received against all defendants including Moore, and it plainly showed all the elements of the robbery-murder and conspiracy to commit the robbery. Of course, it was the testimony of accomplices and required corroboration.

 Finger prints of appellant Moore were found on the front door glass of the Stevens residence and were adequately proved to be his. This, of course, was sufficient corroboration of the accomplice's testimony so far as he was concerned. It will be recalled that the above quoted authorities establish that testimony of an accomplice needs no corroboration with respect to the corpus delicti, only as to connection of the defendant with the crime, and that it may be sufficient though slight and entitled to little consideration when standing alone, sufficient if merely such as to satisfy the jury that the accomplice to be corroborated is telling the truth. Also, each defendant's own admissions are sufficient corroboration so far as he or she is concerned. The statements made to the police by both appellants are enough corroboration and the testimony of appellant Ray is sufficient as to her. All of the necessary elements of corroboration (ex-

cept the finger prints) are present with respect to appellant Ray and are amply sufficient to sustain her conviction.

No problem of due process, error in receiving or excluding evidence or other problems of any substantiality emerge from this record. Appellants had an eminently fair trial.

Judgment affirmed as to each appellant.

Fox, P. J., and Herndon, J., concurred.