[No. S053965. May 29, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ROBERT PULIDO, Defendant and Appellant.

**COUNSEL**

C. Elliot Kessler, under appointment by the Supreme Court, for Defendant and Appellant.

John T. Philipsborn and Dennis Riordan as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin, Jeremy Friedlander, George F. Hindall III and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—Penal Code section 189[1] provides that any killing committed in the perpetration of specified felonies, including robbery, is first degree murder. ■ Under long-established rules of criminal complicity, liability for such a murder extends to all persons "jointly engaged at the time of such killing in the perpetration of or an attempt to perpetrate the crime of robbery" (*People* v. *Martin* (1938) 12 Cal.2d 466, 472 [85 P.2d 880]) "when one of them kills while acting in furtherance of the common design." (*People* v. *Washington* (1965) 62 Cal.2d 777, 782 [44 Cal.Rptr. 442, 402 P.2d 130].)

In this case, we address a question regarding the scope of complicity in robbery murder. If one person, acting alone, kills in the perpetration of a robbery, and another person *thereafter* aids and abets the robber in the asportation and securing of the property taken, is the second person guilty of first degree murder under section 189? We conclude the answer is no. Although the second person is an accomplice to robbery (*People* v. *Cooper* (1991) 53 Cal.3d 1158, 1165 [282 Cal.Rptr. 450, 811 P.2d 742]), such participation in the robbery does not subject the accomplice to murder liability under section 189, because the killer and accomplice were not "jointly engaged at the time of such killing" in a robbery (*People* v. *Martin*, *supra*, 12 Cal.2d at p. 472); the killer, in other words, was not acting, at the time of the killing, in furtherance of a "common" design to rob (*People* v. *Washington*, *supra*, 62 Cal.2d at p. 782).

In the present case the jury was not instructed on the above principle. The lack of such instructions does not, however, require reversal; the omitted issue was resolved adversely to defendant under other, properly given instructions. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; see also *People* v. *Guiton* (1993) 4 Cal.4th 1116, 1130 [17 Cal.Rptr.2d 365, 847 P.2d 45].) We will therefore affirm the judgment of the Court of Appeal, which affirmed defendant's conviction for first degree murder.

---

[1] All further unspecified statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Sometime between 1 a.m. and 5:30 a.m. on May 24, 1992, Ramon Flores, the cashier at a Shell gas station in San Mateo, was shot in the head with a single .45-caliber bullet, killing him within seconds. A neighbor heard a loud bang coming from the direction of the gas station around 3:45 a.m., then a voice yelling; he could not distinguish words, but told a police detective it sounded like the person was addressing someone else. A cash register taken from the store was found the next morning in some roadside bushes elsewhere in San Mateo. Defendant's fingerprints were on the cash register, as well as on an unopened can of Coke found on the store counter. No fingerprints of Michael Aragon, who defendant testified committed the killing, were identified on either the can or the register.

Arrested on an unrelated auto theft charge, defendant volunteered that he had information about the Shell station robbery. He led police to a location where they found discarded, unused .45-caliber cartridges, which bore ejection markings resembling those on a cartridge found on the gas station floor. Defendant made a series of inconsistent exculpatory statements to police, blaming the robbery and killing successively on a man named Carlos Vasquez, on a relative of defendant's named Eduardo Alarcon and, finally, on an unidentified Tongan man. In a telephone conversation from jail with his uncle, Michael Aragon, and Aragon's cohabitant, Laura Moore, however, defendant said he was alone during the robbery.

At the time of the killing, defendant was staying with Aragon, Moore and their children in their San Mateo home. While he was staying with them, Aragon, two of the children, and a neighbor saw defendant with a pistol, which the neighbor identified as a .45-caliber Colt. During that time, defendant twice observed that the nearby Shell station would be easy to rob because the attendant was always asleep. Aragon told defendant to get rid of the gun because he, Aragon, was on probation. He had been convicted in 1989 of burglary, possession of cocaine and contributing to the delinquency of a minor.

Aragon and Moore testified that defendant was at home when they went to bed around midnight on May 23, but was gone when they got up at around 3 a.m. to care for their baby. The next morning, Sunday, May 24, they awoke to find defendant asleep in the living room with his clothes and shoes on. He showed Aragon his wallet and said, "Look unc, almost all ones." Later that day, Moore discovered defendant was carrying a handgun and insisted he and Aragon dispose of it. At her direction, defendant took the gun apart; Moore then boiled the pieces in soapy water and put most of them in

a bag, which defendant and Aragon threw away near Candlestick Park. Two pieces that Moore had retained to prevent reassembly were later given to police and identified as fitting a .45-caliber Colt.

After seeing a newspaper article about the killing, Aragon asked defendant if he committed it. Defendant denied he had, but a few days later, when Aragon asked again, defendant admitted the crime. He told Aragon he bought a Coke, then shot Flores in the face, took the register and later threw it in some bushes. In a letter from jail, however, defendant wrote to Moore, "If Michael is reading this, tell him I didn't kill that guy, I was just messing with him."

Defendant testified, blaming Aragon for the killing. Aragon, he stated, had seen where defendant kept the pistol. On the night of May 23, defendant and Aragon went out in Aragon's car; defendant thought the pistol was on the shelf where he usually kept it. They went to Hunters Point, where Aragon bought and smoked some cocaine. They left, but returned later for Aragon to buy and smoke more cocaine. Eventually the two arrived at the Shell station in San Mateo. Aragon went inside, defendant thought for matches or cigarettes. Defendant waited outside. He heard a gunshot and ran into the store. Aragon was holding defendant's gun. Flores was lying on the floor, bleeding from a large bullet wound in his face. Defendant yelled at his uncle, ran out of the store and got in the passenger seat of the car. A few seconds later, Aragon came out, holding the cash register in his left hand and the gun in his right hand. He threw the register on defendant's lap and drove away.

As they were driving away from the scene, Aragon told defendant to open the register. When defendant did not comply, Aragon pointed the gun at him and insisted. Defendant got a screwdriver from the back of the car and pried the register open. At Aragon's command defendant gave him the money and dumped the register in some bushes by the side of the road. Defendant denied touching a Coke can in the store that night; he suggested he might have touched the can on some earlier occasion when he bought a drink at the store.

The defense also presented evidence casting doubt on Aragon's credibility. While admitting a prior drug possession conviction, Aragon denied he was still using cocaine at the time of the killing. However, Aragon's sister (defendant's aunt) testified he came to her house on Sunday, May 24 or Monday, May 25, at which time he was "on something," but did not smell of alcohol. Her son described Aragon as acting paranoid and smelling of crack cocaine. The sister opined Aragon was a liar and a thief. A police detective testified that, when first interviewed, Aragon said he had gotten up at 12:15

a.m. Sunday to take care of the baby. When Aragon and Moore were later interviewed together at the police station, both said it was around 3 a.m. During a discussion about the time period in which the killing occurred, Aragon said to Moore, "That's when I was with you, remember?"

The jury convicted defendant of robbery and first degree murder, and found true a robbery-murder special-circumstance allegation. (§§ 211, 187, 189, 190.2, subd. (a)(17)(A).) The jury was unable to reach a verdict on allegations of personal gun use and personal infliction of great bodily injury. (§§ 1203.075, 12022.5, subd. (a).) Defendant was sentenced to a life term without the possibility of parole.

The Court of Appeal affirmed the murder conviction and sentence. The court rejected defendant's contention, based on *People* v. *Esquivel* (1994) 28 Cal.App.4th 1386 [34 Cal.Rptr.2d 324] (hereafter *Esquivel*), that the trial court should, sua sponte, have instructed the jury defendant was not liable for the murder if he formed the intent to aid and abet the robbery only after Flores was killed. The Court of Appeal reasoned that because one who intentionally assists a robber in the asportation of the stolen property is, under *People* v. *Cooper*, *supra*, 53 Cal.3d 1158, guilty of robbery, and because a killing in the commission of robbery is first degree murder under section 189, "[i]t is unnecessary for the jury to determine whether the intent to aid and abet the underlying felony preceded the killing." We granted review to resolve the conflict between the lower court's decision and that in *Esquivel*.

## I.

Although this court has never decided the precise question before us, we have on many occasions discussed the scope of a robber or other felon's liability for a killing committed by a confederate. As shown below, our descriptions of an accomplice's liability have limited complicity to killings occurring while the killer was acting in furtherance of a criminal purpose common to himself and the accomplice, or while the killer and accomplice were jointly engaged in the felonious enterprise. The only previous decision on this question by a Court of Appeal also held robbery-murder complicity to be so limited. (*Esquivel, supra*, 28 Cal.App.4th at pp. 1394-1397; accord, *Com.* v. *Waters* (1980) 491 Pa. 85 [418 A.2d 312, 318] ["the *common design* to commit the felony must exist when the act of slaying occurs in order to establish an accomplice's liability for felony-murder" (italics in original)]; see also *People* v. *Asher* (1969) 273 Cal.App.2d 876, 890 & fn. 2 [78 Cal.Rptr. 885] [approving instruction that to convict accomplices of murder, jury must find they " 'either conspired to rob, or

aided, abetted or participated in the robbery prior to the time the fatal shot was fired' "].)

At the outset, it should be emphasized we are not concerned here with that part of the felony-murder rule making a killer liable for first degree murder if the homicide is committed in the perpetration of robbery. This case involves only the question of a *nonkiller's* liability for the felony murder committed by another. We are concerned, in other words, not with the felony-murder rule's "aggravation of culpability aspect," but with its "complicity aspect." (Robinson, *Imputed Criminal Liability* (1984) 93 Yale L.J. 609, 618, fn. 25.)

Our earliest statement of the complicity of one robber in a murder committed by another appears to have been in *People* v. *Vasquez* (1875) 49 Cal. 560 (hereafter *Vasquez*). A man had been shot to death during the robbery of a store. Vasquez admitted his participation in the robbery, but testified the shot had been fired by another of the robbers, without Vasquez's approval or assistance. On appeal from his first degree murder conviction, Vasquez complained of the following jury instruction: " 'It is no defense to a party associated with others in, and engaged in a robbery, that he did not propose or intend to take life in its perpetration, or that he forbade his associates to kill, or that he disapproved or regretted that any person was thus slain by his associates. If the homicide in question was committed by one of his associates engaged in the robbery, in furtherance of their common purpose to rob, he is as accountable as though his own hand had intentionally given the fatal blow, and is guilty of murder in the first degree.' " (*Id.* at pp. 562-563.) We held the instruction accurately stated the law under section 189, although we declined to elaborate, observing merely that "no argument is required to sustain it, as a clear and correct statement of the law on that point." (*Id.* at p. 563; accord, *People* v. *Lawrence* (1904) 143 Cal. 148, 157 [76 P. 893] [*Vasquez* instruction correctly states "the rule of absolute responsibility of a party for a homicide committed by his associates in furtherance of their common purpose to rob."].)

In another early case, *People* v. *Olsen* (1889) 80 Cal. 122 [22 P. 125] (hereafter *Olsen*), overruled on other grounds in *People* v. *Green* (1956) 47 Cal.2d 209, 227, 232 [302 P.2d 307], we approved an instruction that, while similar to the *Vasquez* instruction, was more general in not being limited to robberies: " 'If a number of persons conspire together to commit a felony, and take the life of another person in the prosecution of the common design, it is murder in all, although only one may have inflicted the fatal blow, the others being present aiding and abetting.' " (80 Cal. at p. 124.) The defendant complained the instruction failed to inform the jury the killing must have

been the " 'ordinary and probable effect' " of the felonious scheme, and not a " 'fresh and independent product' " of the killer's mind. (*Id.* at p. 125.) Rejecting this argument, we held the instruction, by limiting complicity to a killing committed *"in the prosecution of the common design,"* adequately excluded killings foreign to the contemplated crime or crimes. (*Ibid.*, italics in original.)

In *People* v. *Washington, supra,* 62 Cal.2d 777 (hereafter *Washington*), we examined the scope of section 189's robbery-murder rule with some care, ultimately holding the rule did not apply to a killing committed by someone other than the robber or robbers. (62 Cal.2d at p. 783.) In *Washington*, we described a robber's complicity as follows: "A defendant need not do the killing himself, however, to be guilty of murder. He may be vicariously responsible under the rules defining principals and criminal conspiracies. All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*Id.* at pp. 781-782.)

Other post-*Vasquez* descriptions of complicity in robbery murder under section 189 are worded in a rather different manner. In both *People* v. *Perry* (1925) 195 Cal. 623, 637-638 [234 P. 890] (hereafter *Perry*) and *People* v. *Martin, supra,* 12 Cal.2d at page 472 (hereafter *Martin*), we stated the rule as follows: "[I]f a human being is killed by any one of several persons jointly engaged at the time of such killing in the perpetration of or an attempt to perpetrate the crime of robbery, whether such killing is intentional or unintentional, or accidental, each and all of such persons so jointly engaged in the perpetration of, or attempt to perpetrate such crime of robbery, are guilty of murder of the first degree." (Accord, *People* v. *Waller* (1939) 14 Cal.2d 693, 703 [96 P.2d 344]; *People* v. *Hutchinson* (1967) 254 Cal.App.2d 32, 38-39 [61 Cal.Rptr. 868]; *People* v. *Ray* (1962) 210 Cal.App.2d 697, 700 [26 Cal.Rptr. 825].) This formulation, unlike the *Vasquez* instruction, does not require that the killing have been "in furtherance of the common purpose to rob," although it does require the killer and accomplice be jointly engaged, at the time of the killing, in a robbery.

As this review demonstrates, our formulations of the rule establishing complicity of one robber in another robber's homicidal act have varied in their precise language and perhaps in the exact scope of complicity intended. One line of cases echoes, verbatim or with relatively minor variation, the *Vasquez* formulation—the killing must be committed "in furtherance of their common purpose to rob." (*Vasquez, supra,* 49 Cal. at p. 563; see *Washington, supra,* 62 Cal.2d at p. 783 [killing "must [have been] committed by the defendant or by his accomplice acting in furtherance of their common

design"]; *Olsen, supra,* 80 Cal. at p. 124 [complicity for killing committed "in the prosecution of the common design"].) *Martin* and *Perry,* on the other hand, appear to state a broader rule of felony-murder complicity, under which the killing need have no particular causal or logical relationship to the common scheme of robbery; accomplice liability attaches, instead, for any killing committed while the accomplice and killer are "jointly engaged" in the robbery. (See also *Perry, supra,* 195 Cal. at p. 638 [*robbery,* rather than *killing,* must be "in furtherance of a common purpose"]; *People* v. *Waller, supra,* 14 Cal.2d at p. 703 [same].) One lower court has explicitly distinguished the two complicity rules, holding that, regardless of the lack of a causal link between robbery and killing, accomplice liability for felony murder is established, as in *Martin* and *Perry,* whenever "the killing is done *during* the perpetration of a robbery in which they were participating." (*People* v. *Cabaltero* (1939) 31 Cal.App.2d 52, 61 [87 P.2d 364], italics added (hereafter *Cabaltero*).)[2]

Under *neither* of the approaches described above, however, does complicity in a felony murder extend to one who joins the felonious enterprise after the killing has been completed. An accomplice's liability for any homicide committed in furtherance of a "common purpose" (*Vasquez, supra,* 49 Cal. at p. 563) or "common design" (*Washington, supra,* 62 Cal.2d at p. 783) of robbery patently does not include a killing that preceded any agreement or intent to participate in the robbery, because the killer was not then acting in pursuit of any such common design or purpose. Even under the arguably broader complicity rule represented by *Martin, Perry,* and *Cabaltero,* liability does not extend to a homicide completed before the accomplice's participation in the robbery began, because the killer and accomplice were not "jointly engaged at the time of such killing" (*Martin, supra,* 12 Cal.2d at p. 472) in robbery, attempted robbery or escape from a robbery. (See also *Cabaltero, supra,* 31 Cal.App.2d at p. 61 [conspirators responsible for killing

---

[2]In *Cabaltero,* the defendant was a participant in a robbery in the course of which another of the robbers impulsively shot and killed a third member of the group, angry at the third man's having fired his own gun at some witnesses. (*Cabaltero, supra,* 31 Cal.App.2d at pp. 55-56.) The Court of Appeal held the evidence supported murder convictions for all the conspirators, whether or not the killing was in furtherance of the common design, because the killing was committed by one of the conspirators during the robbery. (*Id.* at pp. 61-62.) The *Cabaltero* rationale has been criticized by commentators as substituting the "mere coincidence of time and place" for what should be a required causal relationship between planned felony and killing. (2 LaFave & Scott, Substantive Criminal Law (1986) § 7.5, p. 212; Morris, *The Felon's Responsibility for the Lethal Acts of Others* (1956) 105 U. Pa. L.Rev. 50, 73 ["There is little to be said in favor of this decision. Applying the express *ratio* of *Cabaltero,* if one of two burglars ransacking a home glances out of a window, sees his enemy for whom he has long been searching and shoots him, the unarmed accomplice, party only to the burglary, will be guilty of murder in the first degree."]; see also *Com.* v. *Waters, supra,* 418 A.2d at pp. 316-318 [rejecting purely temporal rule for felony-murder complicity in favor of one requiring killing be "in furtherance of" the felony].)

that occurred during robbery in which they "were participating"].) Our cases establishing the complicity of a nonkiller in a felony murder have thus uniformly required, at a minimum, that the accomplice have been, at the time of the killing, a conspirator or aider and abettor in the felony.

The Court of Appeal, holding to the contrary, relied heavily on *People* v. *Cooper, supra,* 53 Cal.3d 1158 (hereafter *Cooper*), in which we addressed the duration of robbery for purposes of aiding and abetting. We held that the asportation element of robbery, although *satisfied* by slight movement, continues until the loot has been carried away to a place of temporary safety. A person therefore commits robbery as an aider and abettor if, all other elements being also satisfied, the person "form[s] the intent to facilitate or encourage commission of the robbery *prior to or during the carrying away of the loot to a place of temporary safety*." (*Id.* at p. 1165, italics in original, fn. omitted.) ▀ █ █ Although *Cooper* briefly discussed the "escape rule" applicable to robbery for purposes of felony murder (*id.* at pp. 1166-1167),[3] the majority there had no occasion to address, and did not address, any question regarding one robber's complicity in the homicidal act of another. Indeed, in *People* v. *Montoya* (1994) 7 Cal.4th 1027 [31 Cal.Rptr.2d 128, 874 P.2d 903], where we followed *Cooper* to reach a similar conclusion as to the duration of burglary for aiding and abetting purposes, we expressly limited our holding to complicity in the burglary itself, reserving the issue of "an aider and abettor's liability for murder upon a theory of felony murder in which the underlying felony is burglary." (*Id.* at p. 1046, fn. 9.)

In addition to *Cooper*, the Attorney General relies on our past statements that section 189 itself requires no "strict 'causal' [citation] or 'temporal' [citation] relationship between the 'felony' and the 'murder.'" (*People* v. *Berryman* (1993) 6 Cal.4th 1048, 1085 [25 Cal.Rptr.2d 867, 864 P.2d 40].) "All that is demanded is that the two 'are parts of one continuous transaction.'" (*Ibid.*) That principle is correct, but inapposite. That the killing in this case was committed in "the perpetration of . . . robbery" (§ 189) and thus constitutes first degree murder on the part of the killer, is beyond question. The robbery and homicide were clearly parts of one continuous transaction, bringing into unchallenged operation the felony-murder rule's *aggravation of culpability* aspect; the only question here, as noted earlier, is the proper scope of the rule's *complicity* aspect. As we have seen, an accomplice's complicity under the California felony-murder rule, as it has

[3]A killing committed by a robber during his or her flight from the scene of the crime, and before reaching a place of temporary safety, comes within section 189. (*People* v. *Salas* (1972) 7 Cal.3d 812, 820-824 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832].)

been understood until now, does not extend to killings committed before the accomplice joined the felonious enterprise.[4]

The parties' remaining arguments, which concern the purposes of the felony-murder rule and the consistency of the rules the parties propose with other principles of criminal law, may be taken as arguments for and against *extending* the felony-murder rule's complicity aspect beyond its current scope. As the Attorney General points out, we are not concerned here with the wisdom of the first degree felony-murder rule itself, or with the criticisms—and defenses—directed at it by judicial and academic commentators; section 189 is the law of California, and we are not free to ignore or alter it if we would. Nevertheless, when the rule as ordained by the Legislature requires detailed delineation, this court properly considers policy and consistency. In particular, we have held the first degree felony-murder rule "should not be extended beyond any rational function that it is designed to serve." (*Washington, supra,* 62 Cal.2d at p. 783.)

Defendant argues the Attorney General's proposed extension of an accomplice's felony-murder complicity would be inconsistent with the rule that a conspirator is not, simply by membership in the conspiracy, made liable for a substantive offense committed pursuant to the conspiracy *before* he or she joined the conspiracy. (*People* v. *Marks* (1988) 45 Cal.3d 1335, 1345 [248 Cal.Rptr. 874, 756 P.2d 260]; *People* v. *Weiss* (1958) 50 Cal.2d 535, 564-565 [327 P.2d 527].) The court in *Esquivel* relied in part on the same reasoning. (*Esquivel, supra,* 28 Cal.App.4th at pp. 1395-1396.)

We agree extension of felony-murder complicity to late-joining aiders and abettors would create an inconsistency between aiding and abetting liability and that of conspirators, where no such conflict now exists. For purposes of complicity in a cofelon's homicidal act, "[t]he conspirator and the abettor stand in the same position." (*People* v. *Ellenberg* (1958) 165 Cal.App.2d 495, 500 [331 P.2d 1053].) In stating the rule of felony-murder complicity we have not distinguished accomplices whose responsibility for the underlying felony was pursuant to prior agreement (conspirators) from those who intentionally assisted without such agreement (aiders and abettors). (See *Vasquez, supra,* 49 Cal. at p. 563 [referring to group of "associates" committing robbery]; *Olsen, supra,* 80 Cal. at p. 125 [referring to "conspiracy" to

---

[4]The Attorney General's reliance on the "continuous transaction" rule is also misplaced because that rule has long been subject to the qualification that the killer's felonious intent must be formed no later than the acts leading to death. (*People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1016 [248 Cal.Rptr. 568, 755 P.2d 1017]; *People* v. *Jeter* (1964) 60 Cal.2d 671, 676-677 [36 Cal.Rptr. 323, 388 P.2d 355].) Even if the "continuous transaction" rule governed complicity as well as aggravation of culpability, therefore, it would not support felony-murder liability for a late-joining accomplice.

commit felony, with murder committed by one member, "the others being present aiding and abetting" (italics omitted)]; *Perry, supra,* 195 Cal. at p. 638 ["confederates" in robbery]; *Martin, supra,* 12 Cal.2d at p. 472 [those "jointly engaged" in robbery].) The Attorney General correctly observes that "the law of conspiracy cannot be automatically analogized to the law of aiding and abetting," but does not explain why the differences between these two species of complicity (chiefly the existence or nonexistence of an agreement) should affect the liability of a late joiner for a homicide committed by others in the criminal enterprise before his or her joinder.

In addition, our holding that conspirators are not liable for substantive crimes committed before their entry into the conspiracy (*People* v. *Weiss, supra,* 50 Cal.2d at p. 564) was based on section 31, which defines as principals all persons "concerned" in the commission of a crime. Citing section 31, the *Weiss* court observed that "[m]anifestly, a conspirator is not 'concerned' in the commission of a crime which was committed before he joined the conspiracy." (50 Cal.2d at p. 564.) Section 31 also provides the basis for punishing aiders and abettors as principals; how such a person is "concerned" in a homicide that was completed before he joined in the criminal enterprise that led to it is equally difficult to see.

On a related point, defendant persuasively argues extension of the felony-murder rule's complicity aspect to late joiners would not serve the rule's primary purpose, "to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit." (*Washington, supra,* 62 Cal.2d at p. 781; accord, *People* v. *Hansen* (1994) 9 Cal.4th 300, 310 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) Justice Tobriner, while serving on the Court of Appeal, made this point in a case applying the rule of *People* v. *Weiss, supra,* 50 Cal.3d 535: "If, as wise commentators have suggested (see, for instance, Holmes, The Common Law (1881), p. 46), the mainspring of criminal sanction lies in its force as a deterrent, the sanction can hardly be applied retroactively by use of the conspiracy doctrine." (*People* v. *Feldman* (1959) 171 Cal.App.2d 15, 21 [339 P.2d 888].) The reasoning is as valid for aiders and abettors as for conspirators. "In either instance, the defendant's late joiner does not aid or encourage the commission of the homicide" (*Esquivel, supra,* 28 Cal.App.4th at p. 1396); in either instance, punishing late joiners for earlier homicides committed by others will not deter the negligent or accidental commission of such homicides.

The Attorney General responds that imposing murder liability on late joiners would, at least, tend to deter such joinder. Leaving aside that we have previously denied section 189 was intended to deter the commission of the underlying felonies themselves (*Washington, supra,* 62 Cal.2d at p. 781), one

would have to question the proportionality of a rule imposing first degree murder liability on a person for a homicide causally unrelated to any of his own acts, and which he is powerless to undo, in order to deter him from assisting the robber-killer in taking away the loot. Section 189 does not demand the imposition of such retroactive liability, either by its terms or by incorporation of common law principles of criminal liability. Indeed, "[t]o convict on this basis would be to establish criminal guilt by ratification, which is not a criminal-law doctrine." (Perkins, *The Act of One Conspirator* (1974) 26 Hastings L.J. 337, 344-345.)

For these reasons, we decline to extend our interpretation of section 189's first degree felony-murder rule to include aiders and abettors or conspirators who join the felonious enterprise only after the murder has been completed.

## II.

Having set forth the applicable legal principles, we turn now to consideration of whether, in the case at bar, any prejudicial instructional error occurred.

Defendant would have us find reversible error in the trial court's failure to instruct that "a felony murder verdict could be based on an aiding and abetting theory only if [defendant] aided and abetted the robbery before the infliction of the fatal wound." (Defendant requested or proposed no such instruction at trial.) In response, the Attorney General argues the court had no sua sponte duty to instruct on the nonliability for felony murder of late-joining aiders and abettors to robbery because no such general principle of law had, at the time of this trial, been articulated by an appellate court or embodied in a standardized instruction. (See *People* v. *Flannel*, *supra*, 25 Cal.3d at pp. 672, 681-682.) In addition, the Attorney General argues, the factual predicate for a sua sponte instructional obligation was absent, as the defense relied primarily on defendant's claims he assisted Aragon only under duress or after reaching a place of temporary safety, rather than on any evidence defendant intentionally assisted only during asportation, after the killing.

We need not decide whether the trial court in this case had any sua sponte duty to instruct on the nonliability of late joiners, because defendant cannot demonstrate prejudice from the asserted instructional error: "[T]he factual question posed by the omitted instruction was necessarily resolved adversely to defendant under other, properly given instructions." (*People* v. *Sedeno*, *supra*, 10 Cal.3d at p. 721.) Specifically, the jury was instructed that the robbery-murder special-circumstance allegation could not be found true

unless defendant was engaged in the robbery *at the time of the killing*. In a modified form of CALJIC No. 8.80.1 (1990 new), drawn directly from the statutory language defining the special circumstance (§ 190.2, subd. (a)(17)), the jury was directed to determine whether or not "the murder was committed *while the defendant was engaged or was an accomplice in*" robbery, attempted robbery or the immediate flight from a robbery. (Italics added.) In the special circumstance verdict, consistent with this instruction, the jury found "that the said defendant, Michael Robert Pulido, engaged in or was an accomplice in the commission of or attempted commission of robbery *during the commission of crime charged in count 1* [murder]." (Italics added.) By its special circumstance verdict the jury thus found—explicitly, unanimously and necessarily—that defendant's involvement in the robbery, whether as direct perpetrator or as aider and abettor, commenced before or during the killing of Flores.

Defendant argues the special circumstance finding is not dispositive because, under another portion of CALJIC No. 8.80.1, the jury could have based its finding on defendant's being a "major participant" in the robbery and acting with "reckless indifference to human life." Such a finding, defendant asserts, could in turn have rested on defendant's assisting Aragon after the killing instead of seeking help for Flores. We disagree. Postkilling assistance to Aragon, by itself, could not have been the basis for the jury's explicit finding defendant "engaged in or was an accomplice in the commission of or attempted commission of robbery *during* the commission of [murder]," nor could it have satisfied the instructional requirement that "the murder was committed *while* the defendant was engaged or was an accomplice in" robbery. (Italics added.) The special circumstance finding thus demonstrates the jury did not accept the theory defendant joined the robbery only after Flores was killed. Any error in the failure specially to instruct on this issue was harmless.

For the same reason, no prejudice could have arisen from the instructions actually given on duration of robbery and liability of accomplices for first degree felony murder. Defendant contends these instructions permitted the jury to convict him of murder on the legally inadequate ground that he assisted Aragon in taking away the robbery loot. ■ An instructional error presenting the jury with a legally invalid theory of guilt does not require reversal, however, if other parts of the verdict demonstrate that the jury necessarily found the defendant guilty on a proper theory. (*People* v. *Guiton, supra*, 4 Cal.4th at p. 1130.) ■ As shown above, the jury's true finding on the robbery-murder special circumstance so demonstrates.

■ For the purpose of guidance in future cases, however, we briefly discuss the standard instructions pertinent to this issue. CALJIC No. 8.27

(1996 bound vol.) states: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of ____, all persons, who either directly and actively commit the act constituting that crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional or accidental." CALJIC No. 9.40.1 (1996 bound vol.), based on our holding in *Cooper, supra,* 53 Cal.3d 1158, tells the jury that, "[f]or the purposes of determining whether a person is guilty as an aider and abettor to robbery," the robbery continues so long as the stolen property is being carried away to a place of temporary safety. CALJIC No. 8.21.1 (1996 bound vol.) states that, "[f]or the purposes of determining whether an unlawful killing has occurred during the commission or attempted commission of a robbery," the crime is still in progress so long as the "perpetrator" is fleeing in possession of the stolen property and has not reached a place of temporary safety.[5]

These standard instructions are correct in general; when, however, substantial evidence would permit the jury to find the defendant began aiding and abetting an enumerated felony only after the killing occurred, they may require modification, or qualification with a special instruction. Unmodified, CALJIC No. 8.27 appears to tell the jury that an aider and abettor in an enumerated felony, without any temporal or causal qualification, is liable for first degree murder in a killing committed by anyone else engaged in the felony. In combination with the *Cooper* instruction concerning the duration of a robbery (CALJIC No. 9.40.1), CALJIC No. 8.27 could well suggest to a jury that a person who aids and abets only in the asportation phase of robbery, after the killing is complete, is nonetheless guilty of first degree murder under the felony-murder rule. As we have seen, that implication would be incorrect.

CALJIC No. 8.27 appears, from the language of its first phrase, to have been drawn in part from the *Martin/Perry* formulation of accomplice liability

---

[5]CALJIC No. 8.27 was given in this case over defense objection. The unsuccessful objection rested on the defense claim the evidence did not support an aiding and abetting theory because any assistance defendant offered Aragon was given under duress or after the two had reached a place of temporary safety. CALJIC Nos. 9.40.1 and 8.21.1 (then No. 9.44) were, without objection, also given, as was, *at defense request,* a special instruction stating, in pertinent part: "For purposes of determining whether the defendant is guilty of robbery felony murder the robbery continues until the robber has reached a position of temporary safety, with or without the stolen property." The special instruction was defective in that it invited the jury to find "defendant" committed "robbery felony murder" if he participated in the robbery at some time before the robbers reached a position of temporary safety.

for felony murder. However, where *Martin* and *Perry* referred to "any one of several persons *jointly* engaged *at the time of such killing* in perpetration of or an attempt to perpetrate" robbery (see p. 721, *ante,* italics added), the instruction refers merely to "any one of several persons engaged in the commission or attempted commission" of the specified felony, omitting the language italicized above. Similarly, where the *Martin/Perry* formulation assigns guilt of felony murder to "each and all of *such persons jointly engaged*" in the robbery (italics added), the instruction assigns such guilt to "all persons, who either actively commit the act constituting that crime" (the specified felony) or who intentionally aid and abet the perpetrator of the felony. The italicized phrase in *Martin* and *Perry*, by referring back to "such" persons jointly engaged, again makes clear that felony-murder liability attaches only to those engaged in the felonious scheme before or during the killing.[6]

One proper manner of modifying CALJIC No. 8.27 to limit the liability of late joiners, therefore, would be to insert in the instruction the following italicized phrase: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of ____, all persons, who either directly and actively commit the act constituting that crime, or who, *at or before the time of the killing,* with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional or accidental." Alternatively, CALJIC No. 8.27 could be qualified by telling the jury directly, through a separate supplemental instruction, that the rule of liability described in the instruction does not apply to a person who aids and abets the perpetrator of the crime only after the killing has been completed. (See, e.g., *People v. Asher, supra,* 273 Cal.App.2d at p. 890, fn. 2 [jury instructed not to convict alleged robbery accomplices of first degree murder unless convinced beyond a reasonable doubt that accomplices "either conspired to rob or aided [and] abetted . . . in the robbery prior to the time the fatal shot was fired."].) There may also be other proper modifications or special instructions that would convey the same rule.

---

[6]The predecessor to CALJIC No. 8.27, CALJIC No. 317 (1946 bound vol.), was more complete in this respect. It read: "If a human being is killed by any one of several persons jointly engaged at the time of such killing in the perpetration of, or attempt to perpetrate, the crime of arson, rape, robbery, burglary, or mayhem, and if the killing is done in furtherance of the common design or is an ordinary and probable effect of the pursuit of that design, all such persons so jointly engaged are guilty of murder of the first degree, and this is the law whether such killing be intentional, unintentional, or accidental."

As defendant cannot show any prejudice for the reasons given above, we need not decide whether the failure to modify or supplement CALJIC No. 8.27 in this case was error.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.