Filed 12/7/23  P. v. Riley CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B320009 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A365309) |
| v. | |
| STEVEN ERICK RILEY, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Frederick N. Wapner, Judge.  Affirmed.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

———————————

## INTRODUCTION

In 1982 Steven Erick Riley was tried for the murder of Michael Fundick during a robbery. At the jury trial, an eyewitness testified she saw Riley "struggling" and "fighting" with Fundick with his hands around Fundick's pockets, causing Fundick to fall to the ground. Fundick died from head injuries consistent with a fall onto pavement or a blow to the head. The evidence indicated Riley acted alone.

The jury found Riley guilty of first degree murder, and he was sentenced to an indeterminate prison term of 25 years to life. This court affirmed Riley's conviction and sentence on direct appeal in *People v. Riley* (June 25, 1984), 2d Crim. No. 44019 (unpub. opn.).

In 2019 Riley petitioned for resentencing under former Penal Code section 1170.95,[1] now section 1172.6.[2] The People opposed his petition on the grounds Riley was the "actual killer" of the victim. The superior court determined Riley was "the actual perpetrator" of the murder and denied Riley's petition for failure to make a prima facie showing for relief. Riley appeals, arguing the record does not establish he was the actual killer as a matter of law. We affirm.

---

[1]     Statutory references are to the Penal Code.

[2]     In 2022 section 1170.95 was renumbered without substantive change. It is now section 1172.6. (See *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Facts at Riley's Murder Trial*

In 1981 Riley was charged with murder (§ 187), with the special circumstance allegation that it was committed during the commission of robbery (§ 190.2, subd. (a)(17)); robbery (§ 211); and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)). The trial court later dismissed, on the People's motion, the robbery and assault charges.

Riley went to trial on the murder charge. His first trial produced a hung jury. Just before the retrial, the court granted the People's motion to dismiss the special circumstance allegation, leaving only the murder charge.

At the second trial, the People's evidence showed Riley and Fundick were seen talking at the Laurel Cafe, a bar on Skid Row, at 6:00 p.m.[3] Half an hour later, an eyewitness saw Riley and Fundick "struggling" and "fighting" at the corner of 5th and Main Streets. Riley had his hands around Fundick's pockets, and, although the eyewitness did not see Riley strike Fundick, she saw Fundick fall to the ground. After this altercation, Riley entered a

---

[3]  Upon Riley's request, the trial transcript was incorporated from the record in his direct appeal into the record in his resentencing appeal. Further, at the prima facie hearing and on appeal, Riley did not object to the introduction of facts from our previous appellate opinion. (See *People v. Vance* (2023) 94 Cal.App.5th 706, 714 [affirming consideration of the facts from a prior appellate opinion when the petitioner did not object in the superior court].) Accordingly, we present the facts from our previous opinion affirming Riley's conviction on direct appeal and from the clerk's and reporter's transcripts of Riley's original trial.

restaurant on Main Street, where he displayed some folded cash and stated he "had just robbed an old man."

Fundick was found lying face-down on the sidewalk, injured, with his pockets turned inside out and coins, a comb, and other personal items scattered on the ground around him. He died four days later from his injuries. The county medical examiner testified Fundick's cause of death was "subarachnoid hemorrhage due to blunt force trauma, which was consistent with being hit by a fist and inconsistent with the head hitting the pavement." A court-appointed pathologist testified, however, that Fundick's injuries "were consistent with his head hitting the pavement."

At trial, Riley's defense advanced several theories. Defense counsel acknowledged "an unfortunate scuffle that resulted in [Fundick's] death," but asserted Riley had not robbed Fundick and thus was not guilty of felony murder. Defense counsel argued "[t]here is no murder without a robbery," and "if while Mr. Fundick were lying on the sidewalk somebody else came along and turned out his pockets, then somebody else is guilty of having robbed him and it is not Steven Riley." Instead, according to the defense, Fundick's injuries were "clearly an accident," and Riley should be guilty of involuntary manslaughter at most. Defense counsel also highlighted the lack of evidence regarding how Fundick "got from standing on the sidewalk to being face-down on the sidewalk," suggested there were "lots of people around," and argued to the jury that "[a]nybody could have" caused Fundick to fall and hit his head.

B.     *The Jury Instructions and Jury Verdict*

After the close of evidence, the trial court instructed the jury on first degree murder (CALJIC 8.10), first degree felony murder (CALJIC 8.21), and involuntary manslaughter (CALJIC 8.45). The jury also received an instruction on the proximate cause requirement for homicide: "To constitute murder or manslaughter there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death. The proximate cause of a death is a cause which, in natural and continuous sequence, produces the death, and without which the death would not have occurred."

The jury returned a general verdict finding Riley guilty of first degree murder. The trial court sentenced Riley to an indeterminate term of 25 years to life.

C.     *Riley's Petition for Resentencing*

In 2019 Riley filed a petition for resentencing under former section 1170.95, now section 1172.6. Riley's petition averred he was convicted of murder under a felony-murder theory or the natural and probable consequences doctrine and could not be convicted after changes to section 189 made by Senate Bill No. 1437.

The People filed their opposition to Riley's petition in September 2019 arguing, as relevant here, Riley was ineligible for relief under then-section 1170.95 as "the actual killer who personally struck the victim and killed him during the robbery." In support, the People submitted this court's 1984 unpublished opinion affirming Riley's conviction and sentence.

Before counsel was appointed, in October 2019 Riley filed a response to the People's opposition in pro per. Riley's response

5

presented an alternate account of the altercation between Riley and Fundick, stating Riley was "violently accosted" by a man with a bottle of alcohol (presumably Fundick) yelling racial slurs and death threats, and Riley "threw one blow" in self-defense before walking away.

In November 2019 the superior court appointed counsel for Riley. Through his appointed counsel, Riley filed a second response to the People's opposition in January 2022. Riley's response sought to introduce Riley's version of events in his earlier filing as new evidence at the prima facie hearing. It further argued Riley could not be convicted of murder after the changes made by Senate Bill No. 1437 because he lacked intent to kill and did not directly cause the injuries leading to Fundick's death.

The superior court held its prima facie hearing on Riley's petition in April 2022. On the day of the hearing, the People filed a supplemental opposition to Riley's petition, arguing the jury instructions established Riley was the actual killer as a matter of law, and Riley's claim of new evidence was better suited for a habeas petition. The People submitted the jury instructions from Riley's trial in support.

At the hearing, the court asked Riley's counsel: "[Riley] was the actual person who inflicted the injury that caused the death, correct?" Riley's counsel acknowledged, "That is the way it was prosecuted, yes." The superior court then denied Riley's petition for failure to state a prima facie case, stating: "[Riley] is the actual perpetrator of this offense. And it is outside the scope of 1170.95 to reopen this and say, well, now it's self-defense."

Riley filed a timely appeal.

6

**DISCUSSION**

On appeal, Riley argues the record does not establish as a matter of law he was the actual killer, and thus his petition for resentencing warrants an evidentiary hearing.

A.    *Standard of Review*

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing" under section 1172.6.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)  "'A denial at that stage is appropriate only if the record of conviction demonstrates that "'the petitioner is ineligible for relief as a matter of law.'"'"  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

B.    *Legal Background*

In 2018, through Senate Bill No. 1437, the Legislature restricted the scope of murder liability, including liability for felony murder under section 189.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  "Penal Code section 189, as amended, now limits liability under a felony-murder theory" to (1) "actual killers;" (2) those who, with the intent to kill, aid or abet the actual killer; and (3) major participants in the underlying felony who acted with reckless indifference to human life. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)

The Legislature also created in section 1172.6 a "special procedural mechanism for those convicted under the former law to see retroactive relief under the law as amended."  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  Under section 1172.6, "'the process begins with the filing of a petition containing a declaration that

7

all requirements for eligibility are met' [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437." (*Strong*, at p. 708; § 1172.6, subd. (a)(3).) "Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960; § 1172.6, subd. (b)(1)(C).)

Once a section 1172.6 petition is filed, "the trial court must appoint counsel for the petitioner, if requested, and determine, after the opportunity for briefing and a hearing, whether the defendant has made a prima facie case for relief under section 1172.6." (*People v. Pickett* (2023) 93 Cal.App.5th 982, 988, review granted October 11, 2023, S281643; § 1172.6, subds. (b)(3), (c).) A petition will raise a prima facie case for relief with "a showing that the petitioner was convicted of murder, attempted murder, or manslaughter under a theory no longer valid under the amended Penal Code." (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1174.) If a petitioner makes a prima facie showing, "the judge must issue an order to show cause and hold 'a hearing'" to determine whether the petitioner is entitled to resentencing relief. (*People v. Clements* (2022) 75 Cal.App.5th 276, 291; § 1172.6, subds. (c), (d).)

When assessing a petitioner's prima facie showing, the superior court examines the record of conviction but should not "engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The superior court accepts the "'"petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual

8

allegations were proved.""" (*People v. Patton* (2023) 89 Cal.App.5th 649, 656, review granted June 28, 2023, S279670.) But "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner"'" and denying the petition at the prima facie stage. (*Lewis*, at p. 971.)

C.     *The Trial Court Did Not Err by Ruling that Riley Was the "Actual Killer" and Denying His Section 1172.6 Petition*

"As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer,'" because an "actual killer" remains liable for felony murder after the amendments to section 189. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973.) An "'actual killer'" is "the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act." (*People v. Vang* (2022) 82 Cal.App.5th 64, 88; accord, *Garcia*, at p. 970 [actual killer is "the person who 'personally' killed the victim"]; *People v. Lopez* (2022) 78 Cal.App.5th 1, 20 (*Lopez*) [same].) By contrast, a person who only "commits an act that is the proximate cause of the victim's death" may be liable for felony murder, but he is not an "actual killer" without personally killing the victim. (*Lopez*, at p. 17.)

The superior court denied Riley's petition because it determined he was the "actual killer" after his counsel conceded that was how the case was presented to the jury by the prosecution, i.e., that Riley was the "actual person who inflicted the injury that caused [Fundick's] death." But according to Riley, despite this concession, the record does not establish he was the

9

actual killer. Instead, he argues, the record leaves open the possibility that his conduct was simply the proximate cause of Fundick's death.

Riley relies heavily on *Lopez, supra,* 78 Cal.App.5th 1, arguing an evidentiary hearing is necessary to determine whether he was the actual killer. *Lopez* examined whether a section 1172.6 petitioner convicted of murder was necessarily convicted as an "actual killer." Like Riley, the petitioner in *Lopez* was charged with the murder of a victim during a robbery and "prosecuted solely under the theory he was the actual killer and committed the robbery alone." (*Id.* at p. 15.)

Lopez testified at trial that he and his drug dealer, Ivan Argueta, drove to the victim's apartment to help Argueta "'move out'" after a fight with the victim, Argueta's boyfriend. (*Id.* at p. 9.) Lopez testified he remained in the living room of the apartment, drinking a glass of water, while Argueta was "screaming" and "moving around" elsewhere in the house. (*Ibid.*) Lopez and Argueta then left with belongings from the apartment; the victim was later found dead in the bedroom. (*Id.* at pp. 6-7, 9.) Noting the lack of "eyewitnesses to the murder" or "any direct evidence of who bludgeoned the victim," the *Lopez* court concluded the jury could have convicted Lopez on a theory of felony murder without finding Lopez personally killed the victim. (*Id.* at p. 19.) The court emphasized the jury instructions prescribed liability for felony murder if the defendant "committed robbery and '[w]hile committing robbery, the defendant caused the death of another person.'" (*Id.* at p. 16, italics omitted.) The jury instructions further explained: "'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act.'" (*Ibid.*)

10

On the basis of these instructions, *Lopez* reasoned, "[t]he jury might have found defendant, though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation." (*Id.* at p. 20.)[4]

Unlike *Lopez*, the record of conviction in Riley's case establishes Riley was the actual killer as a matter of law because there was no evidence at trial of an accomplice who could have been the actual killer. The defendant in *Lopez* argued at trial that he was present at the scene of the crime, but his accomplice Argueta was the actual killer. (*Lopez*, *supra*, at 78 Cal.App.5th at p. 15.) The *Lopez* court recognized the jury might have accepted Lopez's theory that Argueta was the actual killer and still convicted Lopez of felony murder based on his involvement in the robbery. (*Id.* at p. 20.) Riley, by contrast, presented no equivalent defense theory. Riley maintains there is still "the possibility that someone other than Riley knocked the victim to the ground and caused his death." Riley's only support is his trial defense counsel's closing argument that "'[t]here is no evidence as to how Mr. Fundick got from standing on the sidewalk to being

---

[4]     The People rely on *Harden*, *supra*, 81 Cal.App.5th 45, where the court held petitioner was the "actual killer," in part because the jury convicted her of felony murder using a jury instruction stating that "'every person who unlawfully *kills* a human being . . . is guilty of "murder."'" (*Id.* at pp. 54-55.) Riley responds that the jury at his trial did not receive the same version of the jury instruction as in *Harden*. Because we agree with Riley on this point, we do not rely on the People's *Harden* argument.

face-down on the sidewalk'" and there were "'lots of people around before, during, and after. Anybody could have done it.'"

But, as noted above, the record of conviction contains no evidence of an accomplice who might have been the actual killer. (See, e.g., *People v. Bodely*, *supra*, 95 Cal.App.5th at p. 1201 [petitioner convicted of felony murder was "actual killer" as a matter of law because "[t]he evidence at trial revealed no indication of any accomplice"]; *People v. Pickett*, *supra*, 93 Cal.App.5th at p. 990 [same, where "there is nothing to suggest that any other person was involved in the incident"]; *People v. Patton*, *supra*, 89 Cal.App.5th at p. 657 [same, because"[i]n the trial court, Patton never offered any theory to support his implicit contention now that he was an accomplice and not the person who actually shot [the victim]"]; *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [affirming petitioner was "actual killer" as a matter of law where "the record here makes clear that Delgadillo was the actual killer and the only participant in the killing"].) And, even before the amendments made by Senate Bill No. 1437, the jury could not have convicted Riley on a felony murder theory for the actions of an unknown "actual killer" entirely unassociated with Riley. (*People v. Pulido* (1997) 15 Cal.4th 713, 719 [describing felony murder accomplice liability, prior to Senate Bill No. 1437, as "limited" to "killings occurring while the killer was acting in furtherance of a criminal purpose common to himself and the accomplice, or while the killer and accomplice were jointly engaged in the felonious enterprise"].) By finding Riley guilty of first degree murder, the jury rejected Riley's unknown-killer defense and convicted Riley as the actual and sole killer.

The superior court properly denied Riley's section 1172.6 petition for failure to make a prima facie showing.

## DISPOSITION

The order denying the petition for resentencing under section 1172.6 is affirmed.

MARTINEZ, J.

We concur:

SEGAL, Acting P. J.

EVENSON, J.*

_____

*      Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.