Filed 10/21/14  Opinion following remand
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFFREY ALLEN WHITMER,<br><br>    Defendant and Appellant. | B231038<br>(Los Angeles County<br>Super. Ct. No.  GA079423) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Candace Beason, Judge.  Reversed in part, affirmed in part, and remanded with directions.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jeffrey Allen Whitmer challenges his convictions on 20 counts of grand theft and 20 counts of making false financial statements. He contends he was unlawfully convicted of grand theft and making false financial statements; in addition, he maintains that his judgment of conviction must be reversed due to insufficiency of the evidence, instructional error, sentencing error, and ineffective assistance of counsel.

In our original opinion (*People v. Whitmer* (2013) 213 Cal.App.4th 122, review granted May 1, 2013, S208843), we determined that appellant had shown reversible error only with respect to certain counts of making false financial statements. In rejecting appellant's other contentions, we concluded that under *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*), a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of grand theft committed pursuant to a single scheme. Because other appellate courts had adopted a contrary interpretation of *Bailey*, we urged the Supreme Court to clarify the holding in *Bailey*.

After granting appellant's petition for review, the Supreme Court limited its review to our determination regarding *Bailey*. In *People v. Whitmer* (2014) 59 Cal.4th 733, 735 (*Whitmer*), the Supreme Court agreed with our conclusion that under *Bailey*, "a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." The court nonetheless determined that its holding could not be applied to appellant, due to prior appellate decisions that had "reached a conclusion contrary to ours . . . ." (*Id.* at p. 742.) Finding appellant entitled to the benefit of the law as previously construed, the court held that he could be convicted of only one count of grand theft. (*Ibid.*)

Following remand of the matter, we have examined appellant's remaining contentions in light of *Whitmer*. We conclude that grand theft of an automobile

2

does not encompass the theft of motorcycles and motorized dirt bikes, but determine that appellant suffered no prejudice from the charging of grand theft of an automobile based on the taking of motorcycles, motorized dirt bikes, and related vehicles. We further conclude that appellant has shown reversible error only with respect to 14 counts of making false financial statements. We therefore reverse his convictions under those counts, as well as all but one of his convictions for grand theft, and remand the matter for resentencing.

## RELEVANT PROCEDURAL BACKGROUND

On July 20, 2010, an information was filed, charging appellant with 21 counts of grand theft of an automobile (Pen. Code, § 487, subd. (d)(1)), 7 counts of making false financial statements (Pen. Code, § 532a), and 14 counts of theft of access cards or account information (Pen. Code, § 484e, subd. (d)).[1] Accompanying the charges was an allegation that appellant took, damaged, or destroyed property valued at more than $200,000 (§ 12022.6). Appellant pleaded not guilty and denied the special allegation.

At the prosecutor's request, the trial court dismissed one count of grand theft of an automobile and one count of making false financial statements. After the presentation of evidence at the jury trial, the trial court amended the information to replace the charges of theft of access cards or account information (§ 484e, subd. (d)) with charges of making false financial statements (§ 532a). The jury found appellant guilty on all counts, as amended, and found the special allegation to be true. The trial court sentenced appellant to a total term of imprisonment of 12 years. In imposing the sentence, the court stayed punishment under all the counts of making false financial statements (§ 654).

3

## FACTS

A. *Prosecution Evidence*

### 1. *Overview*

The prosecution submitted evidence that appellant, while acting as manager for a motorcycle dealership, arranged for the fraudulent sale of 20 motorcycles, motorized dirt bikes, all terrain vehicles (ATVs), and similar recreational vehicles. In collaboration with Mordichi Mor, appellant arranged fraudulent sales to fictitious buyers, using falsified financing agreements and credit purchases, resulting in monetary losses to the dealership.[2]

### 2. *Background*

Jerome Gilding owned Temple City Power Sports, a business located in San Gabriel that sold and serviced motorcycles, motorized dirt bikes, ATVs, and jet skis. Because Gilding devoted most of his time to dealerships he owned in Temecula and other locations, he employed a sales manager to operate the dealership, maintain its inventory, and supervise the sales staff, including employees in its finance department.

Customers of the dealership negotiated purchases with salespersons. The dealership made sales to customers who entered into financing agreements or paid with credit cards. In such cases, after the salesperson reached an agreement with the customer regarding an item and the manner of payment, the transaction was referred to the sales manager for approval. If approved, the transaction was sent to the dealership finance department, which collected the information necessary to

---

[1]    All further statutory citations are to the Penal Code, unless otherwise indicated.

[2]    Mor's name is stated in different ways in the record. For simplicity, we refer to him as Mor or Mordichi.

4

process the financing agreement or credit card sale. When the dealership sold an item to a customer who failed to make the loan payments or used a bad credit card, the dealership incurred a "charge back," that is, took responsibility for the loss on the transaction. According to Gilding, to prevent charge backs, the dealership's policy was to require customers to make purchases in person and to present two forms of identification.

Ordinarily, when credit card purchases were made, the card was swiped through a credit card machine, which instantaneously sent information regarding the purchase to the pertinent bank. An approval or denial was received from the bank within a few seconds. In contrast, if the machine was set for an "offline" or "forced" sale, the machine recorded the transaction but sent no information to the bank. As a result, no immediate credit approval or denial was generated; instead, information regarding the transaction was transmitted to the bank at the end of the business day. Gilding did not permit offline sales.

Associated with each vehicle sold by the dealership is a document known as the "manufacturer certificate of origin" (MSO). The vehicle's original MSO can be used to establish title to the vehicle in other states and countries. The dealership retained the original MSO after a sale unless the vehicle was sold to an out-of-state purchaser or transferred to another dealer. The dealership had contractual obligations to several manufacturers not to sell vehicles for exportation outside the United States.

In 2009, appellant was the dealership's sales manager, and Alex Barrera was employed as a salesperson. Eric Van Hek worked in the financial department until August or September 2009, when he was replaced by Richard Carlos. In late August or early September 2009, Gilding told appellant not to deal with Mordichi Mor, who had engaged in a fraudulent transaction at the dealership in 2008.

5

### 3. *Offenses*

Carlos testified that he was a finance manager at the dealership for six to eight months. He had little prior experience with financial operations. According to Carlos, appellant ran the dealership and directed his activities. In the fall of 2009, Carlos often saw a person he knew as "Mordichi" talking to appellant in the dealership. After meeting with Mordichi, appellant directed Carlos to process sales transactions involving customers Carlos had never met, contrary to the dealership's policy. Whenever the transaction involved a credit card, appellant told Carlos to process it as an offline sale. Carlos prepared the paperwork for each transaction and gave it to appellant, who returned the documents with the customer's signature to Carlos. Carlos heard appellant direct other employees to deliver the purchased vehicles to Mordichi's home and obtain the customers' signatures there.

In December 2009, when Carlos received phone calls from banks attempting to locate the customers, he brought the calls to the attention of appellant, who said he would take care of them. After a fraud inquiry began, Carlos overheard appellant suggest to investigating police officers that appellant did not know Mor's full name. Later, Carlos saw appellant shredding some documents. Appellant directed Carlos not to place the shredded documents in the dealership's dumpster, but to dispose of them elsewhere.

Angela Wilcox, a dealership employee, testified that during the fall of 2009, she saw appellant with Mor many times in the dealership. At appellant's request, she gave appellant original MSOs from the dealership's files related to deals appellant arranged with Mor. Later, she overheard appellant tell police officers that he was unsure of Mor's name, even though Mor was a well known customer whose name and address were in the dealership's computer system. Afterward, Carlos told her that appellant had asked him to dispose of shredded documents off the dealership's premises.

Gilding testified that in mid-December 2009, a credit card company told him that credit card usage had increased at the dealership, and that he should expect charge backs. He initiated an inquiry that uncovered 20 potentially fraudulent sales of motorcycles, motorized dirt bikes, ATVs, and recreational vehicles at the dealership from August 4 to December 8, 2009. Barrera was the salesperson in all the sales, each of which involved one of seven purported buyers. None of the purported buyers was Mor. The first two sales were processed by Van Hek, and the remaining sales were processed by Carlos. Fourteen of the transactions involved offline credit sales, and six involved financing agreements. The dealership incurred a charge back on each sale ranging from $9,100 to $21,479.80, resulting in losses exceeding $250,000. In addition, the original MSOs for the vehicles in the dealership's files had been replaced by copies, even though the transactions were not of the type that required the dealership to transfer the original MSO to the purchaser.

Shortly after Gilding discovered the potential fraud, Barrera stopped appearing for work. On December 15, 2009, Los Angeles County Sheriff's Department Detective David Swanson interviewed appellant regarding the potential fraud. Appellant described Mor as a person who "hung around" the dealership, but denied that Mor was his friend. Appellant further stated that Mor had introduced the actual buyers to him and recommended them as customers.

Later, El Monte Police Department Detective Armando Valenzuela determined that the identification information provided for the buyers on the sales documents was false, and that the existence of the buyers could not be established. He also discovered that several of the vehicles had been shipped to Israel.

On February 16, 2010, Detective Valenzuela, accompanied by El Monte Police Department Detective Brian Villa, interviewed appellant. Appellant initially stated that "somebody named Mordichai" had referred the purchasers, who

7

appeared in person at the dealership. When the detectives replied that they had information establishing that appellant personally knew Mor, he became agitated and asked, "Am I under arrest?" The detectives then arrested him. After receiving *Miranda* warnings,[3] appellant stated that Mor had "got[ten] the ball rolling" on the transactions, that Van Hek had taught him how to do offline transactions, and that he had participated for "personal gain" because he faced "some bad times at home economically." Appellant also acknowledged that none of the purchasers came to the dealership.

B. *Defense Evidence*

Appellant testified that he had only a professional relationship with Mor, who often brokered transactions at the dealership. Appellant denied that Gilding warned him not to do business with Mor, that he arranged the fraudulent sales with Mor, or that he directed employees to deliver the vehicles to Mor. He also denied any knowledge that the sales were fraudulent when they were transacted.

According to appellant, Carlos had primary responsibility for the financial aspects of the transactions. Appellant's role in a transaction was limited to approving the salesperson's initial agreement with the customer before it moved to a financial manager. If the customer chose to pay by credit card, the financial manager was responsible for collecting the payment through the credit card machine; if the customer chose to finance the purchase, the financial manager was responsible for obtaining the relevant documentation. In each case, the purchase documents were then transmitted to Gilding's Temecula dealership for final processing before they were returned to Temple City Power Sports.

---

[3]     *Miranda v. Arizona* (1996) 384 U.S. 436.

Appellant further testified that after the fraud was discovered, he told police officers that he was unsure of Mor's name because people referred to Mor in different ways. Later, in February 2010, when appellant met with Detectives Valenzuela and Villa, Villa acted in an insulting and threatening manner. Appellant denied having admitted any misconduct during the interview.[4]

Ryan Morgan testified that in the fall of 2009, appellant directed him to deliver vehicles to the home of someone he knew as "Mordichi." In signing for the deliveries, Mordichi used the name of the person identified in the contract. Stephen Valdez, a dealership salesperson, testified that he accompanied Morgan during one such delivery.

## DISCUSSION

As explained above, our Supreme Court has determined that appellant may suffer only one conviction for grand theft. (*Whitmer*, *supra*, 59 Cal.4th at pp. 734, 742.) Appellant's remaining contentions are (1) that he was unlawfully convicted of grand theft of an automobile, (2) that he was unlawfully convicted of making false financial statements, (3) that there is insufficient evidence to support his convictions, (4) that the trial court erred in failing to instruct on aiding and abetting liability, and (5) that he received ineffective assistance of counsel. As explained below, we conclude that appellant has established reversible error with respect to 14 of his 20 convictions for making false financial statements. We reject his remaining contentions.

---

[4] Appellant acknowledged telling the detectives that the purchasers had personally appeared in the dealership, but testified that in saying this he was relying on information from other people.

9

A. *Grand Theft of an Automobile*

Appellant contends he was unlawfully convicted of grand theft of an automobile because that crime does not encompass motorcycles, off road dirt bikes, ATVs, and other recreational vehicles. He thus argues that the information improperly charged him with the crime, that the jury received erroneous instructions regarding it, and that the jury's verdicts fail for want of sufficient evidence. As explained below, we agree that the crime is limited to the theft of automobiles, but conclude that the errors in the information, instructions, and verdict forms were not prejudicial.

1. *Grand Theft*

Our inquiry requires us to examine the statutory scheme regarding grand theft. Generally, "the crime of theft is divided into two degrees, grand theft and petty theft. (§ 486.) Grand theft, therefore, is not a separate offense, but simply the higher degree of the crime of theft. [¶] Section 487 defines grand theft to include theft of property worth more than $400 (subd. (a)) and the theft of an automobile (subd. (d)[(1)])." (*People v. Ortega* (1998) 19 Cal.4th 686, 696, italics omitted, disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228.) Under the statute, theft of an automobile constitutes grand theft regardless of its value. (*People v. Thomas* (1974) 43 Cal.App.3d 862, 870.)

2. *Underlying Proceedings*

The information initially charged appellant with 21 counts of grand theft of an automobile (§ 487, subd. (d)(1)), one of which was later dismissed at the beginning of the trial. During the trial, the prosecution presented evidence that appellant orchestrated the theft of 20 motorcycles, motorized dirt bikes, ATVs, and other recreational vehicles, each of which was valued at no less than $9,100.

10

In instructing the jury, the trial court stated that appellant was charged with grand theft in violation of section 487.[5] The court further told the jury: "If you conclude that the defendant committed a theft, you must decide whether the crime was grand theft or petty theft. [¶] The defendant committed grand theft *if he stole property worth more than $400.* Theft of an automobile *or a motor vehicle* is grand theft." (Italics added.) Later, during closing arguments, the prosecutor stated that each stolen vehicle was the subject of a "[section] 487 charge" or "grand theft auto" charge, and maintained that the term "auto" encompassed motor vehicles, including motorcycles and ATVs. The verdict form for each grand theft count asked the jury to determine whether appellant was guilty of "grand theft auto, in violation of . . . [s]ection 487[, subdivision] (d)(1)" regarding a specified vehicle. (Upper case omitted.)

The record discloses no objection by appellant to the instructions, prosecutor's argument, or verdict forms. The jury found appellant guilty on all the counts, and also found that he had taken property worth more than $200,000.

### 3. *"Automobile"*

The initial question we confront is whether the term "automobile," as used in subdivision (d)(1) of section 487, is equivalent to the term "motor vehicle," as the instructions and the prosecutor informed the jury. We conclude that the term "automobile" does not encompass all motor vehicles.

Because our research has disclosed no decision addressing the question before us, we confront an issue of statutory interpretation. "'In construing a statute, our task is to determine the Legislature's intent and purpose for the

---

[5]     The trial court initially stated that appellant was charged with grand theft under section 484, but later corrected this error.

11

enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said. [Citation.] . . .' [Citations.] We examine the statutory language in the context in which it appears, and adopt the construction that best harmonizes the statute internally and with related statutes. [Citations.]" (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1149, quoting *People v. Garcia* (2002) 28 Cal.4th 1166, 1172.) In addition, we may examine the statute's legislative history. (*People v. Palmer, supra,* 133 Cal.App.4th at p. 1149.)

The term "automobile," as commonly understood, does not encompass all motor vehicles. The term is ordinarily defined to mean a particular type of motor vehicle, namely, a four-wheeled self-propelled vehicle intended to transport people. (Webster's 3d New Internat. Dict. (2002) p. 148 ["a us[ually] 4-wheeled automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal-combustion engine using a volatile fuel (as gasoline)"]; Merriam-Webster's Collegiate Dict. (1995) p. 78 ["a . . . four-wheeled automotive vehicle designed for passenger transportation"].)

Nor does subdivision (d)(1) of section 487 disclose any legislative intent to attach a broader meaning to the term. Generally, under the principle of *expressio unius est exclusio alterius*, "'the expression of certain things in a statute necessarily involves exclusion of other things not expressed. . . .' [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13). Here, subdivision (d)(1) of section 487 states that grand theft is committed when "the property taken is any of the following: [¶] . . . An automobile, horse, mare, gelding, any bovine animal, any caprine animal, mule, jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow, or pig." It is well established that the Legislature's intent regarding this provision was to designate theft of the enumerated items as

12

grand theft regardless of their value.  (*People v. Thomas*, *supra*, 43 Cal.App.3d at p. 870.)  Because the items following the term "automobile" are carefully and precisely specified, the provision exhibits no intent to use the term "automobile" broadly to mean "motor vehicle," for purposes of proving grand theft without a demonstration of the stolen item's value.

Our conclusion finds additional support in the legislative history of section 487, subdivision (d)(1), and related statutes.  As enacted in the 19th Century, the predecessor of section 487, subdivision (d)(1), exempted only animals from the proof of value requirement.  (See *People v. Townsley* (1870) 39 Cal. 405, 406.)  In 1905, the Legislature enacted former Penal Code section 499b, the so-called ""joyrid[ing] statute,'" which established as a crime the act of driving or temporarily using "any automobile, *bicycle, motorcycle or other vehicle*" without the owner's consent.  (Stats. 1905, ch. 90, § 1, pp. 184-185, italics added; *People v. Thomas* (1962) 58 Cal.2d 121, 125, overruled on another ground in *People v. Barrick* (1982) 33 Cal.3d 115, 135, fn. 9.)  In 1913, the Legislature created a similar offense in enacting the statutory predecessor of Vehicle Code section 10851, which established as a crime the act of driving any "motor vehicle" without the owner's consent, and expressly defined "'automobile'" to mean "all motor vehicles *excepting motorcycles*."  (Stats. 1913, ch. 326, § 1, p. 639, italics added.)

Not until 1927 did the Legislature amend the predecessor of section 487, subdivision (d)(1), to include "automobiles" among the enumerated items.  (Stats. 1927, ch. 619, § 4, p. 1047.)  Later, in 1996, the Legislature amended section 499b to eliminate from it all provisions duplicative of Vehicle Code section 10851, which addresses the driving or taking of a "vehicle."  (Stats. 1996, ch. 660, §§ 1-3, pp. 3669-3670.)  Under the Vehicle Code, the term "'vehicle'" is defined broadly to mean "a device by which any person or property may be propelled, moved, or

13

drawn upon a highway, excepting a device moved exclusively by human power or used exclusively upon stationary rails or tracks."  (Veh. Code, § 670.)

In view of this history, the term "automobile" in section 487, subdivision (d)(1), cannot be regarded as equivalent to "motor vehicle."  The Legislature, in establishing the related crimes, used the term "automobile" in a manner that excluded -- at a minimum -- motorcycles.  Furthermore, after amending the predecessor of section 487, subdivision (d)(1) to include the term "automobile," the Legislature has undertaken no action suggesting that the term encompasses motorcycles or is equivalent to the broad term "vehicle," as defined in the Vehicle Code.

Appellant was thus improperly charged with grand theft of an automobile under subdivision (d)(1) of section 487, as the charges were clearly erroneous to the extent they involved motorcycles or dirt bikes.[6]  However, for the reasons explained below, it is unnecessary for us to determine the full extent of the charging error, as appellant suffered no prejudice from it.

### 4.  *Grand Theft of Property Exceeding $400 in Value*

In view of the trial proceedings, we further conclude that appellant was properly convicted of a different type of grand theft under subdivision (a) of section 487, that is, the theft of property worth more than $400.

---

[6]    We do not address or decide whether the charges were erroneous with respect to the ATVs and other recreational vehicles because the record contains little or no evidence regarding their design and function.

14

### a. Informal Amendment of the Information

To the extent appellant argues that he lacked notice that he was charged with grand theft under subdivision (a) of section 487, his contention fails in light of the so-called "informal amendment doctrine," which constitutes a judicial recognition that an information may be amended without written alterations to it. (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 113 (*Sandoval*)). Generally, the purpose of an accusatory pleading is "'to provide the accused with reasonable notice of the charges.'" (*Sandoval*, *supra*, 140 Cal.App.4th at p. 132, quoting *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 689-690.) Nonetheless, the Penal Code permits accusatory pleadings to be amended at any stage of the proceedings "for any defect or insufficiency" (§ 1009), and bars reversal of a criminal judgment "by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits" (§ 960). In view of these provisions, "[t]he proceedings in the trial court may constitute an informal amendment of the accusatory proceeding, when the defendant's conduct or circumstances created by him amount to an implied consent to the amendment." (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 213, p. 418.)[7]

An instructive application of the doctrine is found in *People v. Toro* (1989) 47 Cal.3d 966, 973, disapproved on another ground in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3. There, the information charged the defendant with attempted murder and assault with a deadly weapon. (*Toro*, *supra*, 47 Cal.3d at p. 972.) In addition to these offenses, the jury was instructed regarding the offense

---

[7] As explained in *Sandoval*, "[t]he informal amendment doctrine makes it clear that California law does not attach any talismanic significance to the existence of a written information. Under this doctrine, a defendant's conduct may effect an informal amendment of an information without the People having formally filed a written amendment to the information." (*Sandoval*, *supra*, 140 Cal.App.4th at p. 133.)

15

of battery with serious bodily injury, which the instructions and verdict forms erroneously described as a lesser included offense of attempted murder. (*Id*. at p. 973.) The defendant's counsel raised no objection to the instructions and verdict form regarding battery with serious bodily injury, or to the jury's consideration of the offense. (*Id*. at pp. 977-978.) Noting that such failure to object may be """"regarded as an implied consent to treat the information as having been amended to include the offense on which the sentence was imposed,"""" our Supreme Court concluded that the defendant had impliedly consented to the submission of the charge to the jury, and had forfeited any contention of error. (*Id*. at pp. 976-977, quoting *People v. Francis* (1969) 71 Cal.2d 66, 75.)

Here, the jury was instructed that appellant could be convicted of grand theft under section 487 if it found that "he stole property worth more than $400" *or* took "an automobile or a motor vehicle." Although the prosecutor referred to the "section 487" offense as "grand theft auto," and the verdict forms cited subdivision (d)(1) of section 487, nothing in the prosecutor's argument or the verdict forms suggested that the propriety of a conviction for grand theft hinged on the classification of the stolen property as an automobile or motor vehicle. Rather, the instructions informed the jury that it could convict appellant under each count of grand theft if he stole property exceeding $400. The instructions thus effectively presented the jury with two distinct theories of grand theft. Because appellant never raised any objection to the instructions before the trial court, he impliedly consented to the submission of both theories to the jury.[8]

---

[8]     We recognize that an amendment to the information is improper when no evidence supporting the amended charges was presented at the preliminary hearing. (*People v. Tallman* (1945) 27 Cal.2d 209, 213.) Here, however, evidence that the value of each pertinent vehicle exceeded $400 was presented at appellant's preliminary hearing.

16

### b. No Reversal Based on Erroneous Theory

The remaining question concerning the charges against appellant is whether the presentation of a legally erroneous theory of grand theft to the jury requires a reversal of the grand theft convictions. The error here is subject to the rule propounded in *People v. Green* (1980) 27 Cal.3d 1, reversed on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 234, and in *People v. Hall* (1986) 41 Cal.3d 826, 834, and *People v. Guiton* (1993) 4 Cal.4th 1116. Under the *Guiton-Green* rule, "if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found legally defective, that is, the theory does not present a legally sufficient basis for conviction, reversal is required unless substantial reasons exist to find that the verdict was based on a legally valid theory." (*People v. Llamas* (1997) 51 Cal.App.4th 1729, 1740.) However, "[a]n instructional error presenting the jury with a legally invalid theory of guilt does not require reversal, . . . if other parts of the verdict demonstrate that the jury necessarily found the defendant guilty on a proper theory." (*People v. Pulido* (1997) 15 Cal.4th 713, 727.) Under the rule, we will reverse unless it is clear beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*People v. Chun* (2009) 45 Cal.4th 1172, 1201.)

Here, the record demonstrates that the jury necessarily found appellant guilty under a legally correct theory. In connection with the 20 grand theft counts, the prosecutor presented evidence as to the value of each vehicle, including that no vehicle was valued at less than $9,100. As this evidence was never challenged or disputed at trial, no rational jury could have rejected it. (*People v. Nicholson* (2004) 123 Cal.App.4th 823, 833.) Accordingly, in convicting appellant under the grand theft counts, the jury could not have determined that appellant took the vehicles without concluding that each vehicle was worth more than $400. Furthermore, in finding appellant guilty on all counts, the jury made a special

17

finding that he had taken property worth more than $200,000.  As no single vehicle was shown to be worth more than $21,479.80 -- the maximum value attributed to the most expensive vehicle -- the jury's finding necessarily reflected its determination that each of the vehicles was worth more than $400.  (See *People v. Guiton*, *supra*, 4 Cal.4th at p. 1131 [stating that other portions of verdict may show that jury necessarily found defendant guilty on a proper theory].)  In sum, none of appellant's grand theft convictions must be reversed due to defects in the information, prosecutor's closing argument, or verdict forms.

      B. *Lesser Included Offense*

Appellant contends he was unlawfully convicted of making false financial statements under section 532a, subdivision (1), because that offense was necessarily included within the offense of grand theft charged against him.  The jury convicted him of 20 counts of making false financial statements, each of which was related to a specific count of grand theft.  Appellant maintains he cannot be convicted under any count of making false financial statements because the jury received instructions on grand theft by trick and by larceny.  He argues that making false financial statements was a lesser included offense of the associated types of grand theft, as set forth in the instructions.  For the reasons discussed below, we disagree.

Generally, "multiple convictions may not be based on necessarily included offenses."  (*People v. Pearson* (1986) 42 Cal.3d 351, 355, italics omitted.)  For purposes of this rule, courts apply the so-called "'elements'" test to decide whether an offense is necessarily included within a charged offense.  (*People v. Reed, supra,* 38 Cal.4th at pp. 1227-1228.)  "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former."  (*Ibid*.)

18

The application of the elements test to grand theft thus requires an examination of the statutory scheme governing theft. In 1927, the Legislature consolidated several formerly distinct offenses into the single crime of theft defined in section 484. (*People v. Davis* (1998) 19 Cal.4th 301, 304-305 (*Davis*).) Those offenses include larceny and theft by trick. (*Ibid.*; *People v. Ashley* (1954) 42 Cal.2d 246, 258.) The consolidation simplified pleading the crime of the theft, but neither changed the elements of the consolidated crimes nor eliminated the substantive distinctions among them. (*Davis*, *supra*, 19 Cal.4th at pp. 304-305; *People v. Nazary* (2010) 191 Cal.App.4th 727, 740-741.)

Our research has disclosed no published decision addressing whether the elements test attaches simply to the statutory definition of grand theft of property exceeding $400, or also requires a consideration of the elements of theft by trick and by larceny. However, it is unnecessary for us to resolve this issue, as appellant's contention fails in light of the elements of each offense.

The statutory elements of grand theft of property exceeding $400 do not include the statutory elements of making a false financial statement. The elements of the former offense are "the taking of personal property [valued at more than $400] from the owner[] into the possession of the criminal without the consent of the owner or under a claim of right, [and] the asportation of the subject matter [with] the specific intent to deprive the owner of his property wholly and permanently." (*People v. Walther* (1968) 263 Cal.App.2d 310, 316; § 487, subd. (a).) Under section 532a, subdivision (1), a defendant commits the offense of making a false financial statement by "knowingly mak[ing] or caus[ing] to be made . . . , *any false statement in writing*, with intent that it shall be relied upon, respecting the financial condition, or means or ability to pay, of himself or herself, or any other person, firm or corporation, in whom he or she is interested, or for whom he or she is acting, for the purpose of procuring in any form whatsoever,

19

either the delivery of personal property, the payment of cash, [or] the making of a loan or credit . . . ." (Italics added.) Because grand theft of property exceeding $400 can be accomplished without a written statement, appellant's contention fails.

The same is true of grand theft of property exceeding $400 accomplished by larceny or trick. Theft by larceny "is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away. [Citations.]" (*Davis*, *supra,* 19 Cal.4th at p. 305.) It requires no written statement. Similarly, to constitute theft by trick, "the following elements must be present: (1) there must be a taking; (2) there must be an asportation of the thing taken; (3) the thing taken must be the property of another; and (4) the taking and carrying away must be with an intent, without claim or pretense of right or justification, to deprive the owner of his property wholly and permanently [citation]." (*People v. Woolson* (1960) 181 Cal.App.2d 657, 668.) No false writing is required. In short, neither type of theft requires a written false financial statement. Appellant's contention thus fails because making false financial statements is not an offense necessarily included within the offense of grand theft charged against him.[9]

C. *Substantial Evidence*

Appellant contends that his convictions for grand theft and some of his

---

[9] *People v. Gonda* (1982) 138 Cal.App.3d 774, upon which appellant relies, is inapposite. There, the appellate court held that grand theft by false pretenses necessarily includes the crimes defined in Corporations Code section 31110 and 31201, which make it an offense to sell franchises without proper registration or to make specified reports containing false statements or omitting material information. (*People v. Gonda, supra,* at pp. 778-779.) As the appellate court did not apply the elements tests in reaching these conclusions (see *ibid*.), it does not constitute persuasive authority on the issue before us.

convictions for making false financial statements fail for want of substantial evidence. For the reasons explained below, we reject his contention regarding the convictions for grand theft, but conclude there is insufficient evidence to support the pertinent convictions for making false financial statements.[10]

1. *Grand Theft Convictions*

For the reasons set forth in *Whitmer*, appellant may convicted only of a single count of grand theft. We nonetheless observe that there is sufficient evidence to support his conviction on each count of grand theft, viewed as a separate crime. With respect to the grand theft convictions, appellant argues there was no direct evidence that he intentionally participated in the fraud activities related to the taking of each vehicle. He directs our attention to the evidence that Mor was a direct participant in the scheme, and maintains that the trial evidence also supports the reasonable inference that Carlos was Mor's "insider."

Appellant's argument misapprehends our role in reviewing the record for substantial evidence. We do not engage in independent factfinding, but instead affirm the jury's determinations if they are supported by any logical inferences grounded in the evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11-14.)

---

[10] "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

Furthermore, we are guided by the principle that "[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence . . . . [Citations.]" (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366, fn. omitted.)

There was ample evidence that appellant directly perpetrated the thefts. Carlos testified that appellant authorized the offline credit card sales and other violations of dealership policies, obtained the false signatures from the fictitious buyers on the sales documents, and arranged for the delivery of the vehicles. Furthermore, according to Detective Valenzuela, appellant admitted that Mor had "got[ten] the ball rolling" on the thefts, that Van Hek had instructed appellant how to do offline transactions, and that appellant had participated for "personal gain." This evidence was sufficient to establish that appellant supervised and directed the thefts within the dealership.


2. *False Financial Statement Convictions Based On Credit Card Transactions*

Appellant also challenges his convictions for making false financial statements under the counts based on credit card transactions (Counts 14, 16, 18, 20, 24, 26, 28, 30, 32, 34, 36, 38, 40, and 42). Regarding the credit card transactions, appellant maintains there is no evidence he arranged for falsified buyer signatures to be placed on any written sale documents affirming the buyer's financial condition or ability to pay. We agree.[11]

---

[11] Appellant does not dispute the existence of substantial evidence to support the remaining counts of making false statements (Counts 4, 6, 8, 10, 12, and 22), which involved transactions based on financing agreements.

22

To commit the offense of false financial statement (see pt. C., *ante*), a defendant must "knowingly make or cause to be made . . . , [*a*] *false statement in writing*, with intent that it shall be relied upon, respecting the financial condition, or means or ability to pay, of himself or herself, or any other person, firm or corporation, in whom he or she is interested, or for whom he or she is acting . . . ." (§ 532s, subd. (1), italics added.)  The offense is rendered a felony when a fictitious name is used in connection with the false financial statement (§ 532a, subd. (4)).

However, as explained in *People v. Vincent* (1993) 19 Cal.App.4th 696, the use of a fictitious name by itself does not establish the offense, absent a false written statement regarding an individual's financial condition or means or ability to pay.  There, the defendant opened two bank accounts using a false name, and then attempted to obtain funds from the bank by depositing a forged check in one of the accounts.  (*Vincent*, *supra*, 19 Cal.App.4th at pp. 698-699.)  After the defendant was convicted of forgery and making false financial statements, we reversed her conviction for the latter offense, as the documents she signed to open the accounts contained no representations "regarding [her] business or financial condition . . . or her means or ability to pay."  (*Id*. at pp. 702-703.)

Here, the documents executed by the purported buyers in connection with the credit card transactions also disclose no such representations.  Although each purported buyer executed a sales agreement, the agreements themselves state only that the buyer is obliged to pay for the vehicle.  Respondent has identified no language in the sales documents -- and we have found none -- containing any statement affirming the buyer's ability to pay.  For this reason, appellant's convictions under the pertinent counts fail for want of substantial evidence.

23

Accordingly, the convictions must be reversed, notwithstanding the fact that the trial court stayed the imposition of punishment on them (§ 654).[12]

### D. *Aiding and Abetting Instruction*

Appellant contends the trial court erred in failing to instruct the jury sua sponte on aiding and abetting liability. He is mistaken. Generally, "[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." (§ 31.) As our Supreme Court has explained, "[i]nstructions on aiding and abetting are not required where '[t]he defendant was not tried as an aider and abettor, [and] there was no evidence to support such a theory.'" (*People v. Young* (2005) 34 Cal.4th 1149, 1201, quoting *People v. Sassounian* (1986) 182 Cal.App.3d 361, 404.) Thus, the jury need not receive instructions on aiding and abetting when the prosecutor tries the case on the theory that the defendant was one of the direct perpetrators of the crimes, neither side relies on an aiding and abetting theory, and no evidence is presented suggesting that the defendant acted merely as an aider and abettor of the crimes. (*People v. Sassounian*, *supra*, 182 Cal.App.3d at p. 404.)

That is the case here. Although the prosecutor argued that Mor "perpetrated" the fraud, he maintained that appellant was Mor's partner within the dealership. As noted above (see pt. C.1. *ante*), the prosecution evidence established that appellant was directly responsible for the fraudulent transactions

---

[12]     In view of this conclusion, it is unnecessary to address appellant's contentions that the counts in question were never properly amended to assert charges under section 532a, and that his counsel rendered ineffective assistance by failing to object to the defective amendments and absence of evidence regarding the amended charges. Our determination renders these contentions moot.

24

inside the dealership. There is otherwise no evidence suggesting that appellant was merely an aider and abettor. At trial, appellant denied any role in the crimes, and never advanced the theory that he merely aided and abetted them. Accordingly, there was no instructional error.

E. *Remedy In Light of Decision in Whitmer*

Although we reject appellant's challenges to his convictions for grand theft, our Supreme Court has concluded on other grounds that appellant may suffer only one conviction for grand theft. (*Whitmer*, *supra*, 59 Cal.4th at pp. 734, 742.) Under the circumstances, the appropriate remedy is to affirm the judgment as to the grand theft charged in Count 3, which the trial court identified as the base term, reverse the remaining grand theft counts, and remand the matter for resentencing, including imposition of the enhancement on Count 3 (§ 12022.6). (See *People v. Brooks* (1985) 166 Cal.App.3d 24, 32, disapproved on another ground in *Whitmer*, *supra*, 59 Cal.4th at pp. 739-741; *People v. Packard* (1982) 131 Cal.App.3d 622, 627, disapproved on another ground in *Whitmer*, *supra*, 59 Cal.4th at pp. 739-741; *People v. Bowie* (1977) 72 Cal.App.3d 143, 157.)

# DISPOSITION

The judgment is reversed with respect to appellant's convictions for grand theft, with the exception of the grand theft charged in Count 3, which the trial court identified as the base term. Also reversed are appellant's convictions for making false financial statements (§ 532a, subds. (1), (4)) under Counts 14, 16, 18, 20, 24, 26, 28, 30, 32, 34, 36, 38, 40, and 42. The matter is remanded to the superior court with directions to resentence appellant on Count 3, to impose the enhancement under section 12022.6, and to impose sentence on the remaining counts of making false financial statements (Counts 4, 6, 8, 10, 12, and 22). The judgment is affirmed in all other respects. Following resentencing, the superior court is directed to prepare an amended abstract of judgment reflecting the resentencing, and to forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

**CERTIFIED FOR PUBLICATION.**

                                       MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

26