Filed 8/24/15  P. v. Devalle CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GREGORY D. DEVALLE,<br><br>        Defendant and Appellant. | A142361<br><br>(San Francisco County<br>Super. Ct. No. SCN221171) |

An encounter on a San Francisco street involving the involuntary transfer of a wallet from one person to another led to defendant Gregory D. Devalle being charged with one count of robbery; one count of felony assault; one count of receiving stolen property; and two counts of resisting a peace officer.  After an unusually long trial, the jury convicted on the receiving and resisting counts.  It was unable to reach agreement on the assault count, which was subsequently dismissed, as was the receiving count, when it was recognized that the conviction was improper.  (See fn. 2, *post*.)  Imposition of sentence was suspended, and defendant was admitted to probation upon specified conditions.[1]

This appeal is concerned primarily with what began as the robbery count.  The jury acquitted on that, but it convicted on the lesser included offense of grand theft, i.e., "money . . . or personal property . . . taken from the person of another" (Pen. Code, § 487,

---

[1] Following sentencing, defendant was remanded to Contra Costa for a probation violation.

subd. (c)).[2]  Defendant contends that this conviction lacks the support of substantial evidence and is infected with prejudicial instructional error.  We conclude these claims are without merit.  We do agree with defendant's claim that remand is required because the trial court erroneously concluded it lacked jurisdiction to reduce the so-called "wobbler" grand theft conviction to a misdemeanor.

## BACKGROUND

The basic contours of the events on the evening of October 16, 2013 are not disputed.

Nicolas Parker was talking on his cell phone while heading for a BART train at the Powell Street Station.  Defendant approached, yelling at Parker in a manner and tone Parker characterized as "belligerent," and which a bystander described as "antagonizing."  Parker had his wallet in his hand because "I was about to get on the BART," when defendant struck Parker in the face.

---

[2]  The statute which defines the offense of receiving "any property that has been stolen or that has been obtained in any manner constituting theft" also provides that "no person may be convicted both pursuant to this section and of the theft of the same property." (Pen. Code, § 496, subd. (a).)  Our Supreme Court has stated:  "[J]uries should be instructed to reach a verdict on the theft charge when the defendant is also charged with receiving the stolen property.  A guilty verdict on the theft charge makes it unnecessary to consider the receiving charge.  This practice . . . promotes efficiency in the jury's deliberations, and will ensure that the statutory ban against dual convictions is applied." (*People v. Ceja* (2010) 49 Cal.4th 1, 10.)

The jury was instructed with CALCRIM No. 3516, that "The defendant is charged in Count I with Robbery and in Count II with Receiving Stolen Property.  You must first decide whether the defendant is guilty of Robbery.  If you find the defendant guilty of Robbery, you must return the verdict form for Receiving Stolen Property unsigned.  If you find the defendant not guilty of Robbery, you must then decide whether the defendant is guilty of Receiving Stolen Property."  Unfortunately, the instruction did not anticipate what happened here—that when the jury acquitted defendant of robbery it obeyed CALCRIM No. 3518 and considered lesser included offenses, specifically, grand theft.  The jury can hardly be faulted for not interpreting CALCRIM No. 3516 to apply to that contingency, when the situation was not caught and corrected by the professionals until the sentencing three weeks later.

Parker testified that after he was punched "my wallet fell out of my hand," and defendant "picked it up off the ground." "[H]e had my wallet in his hand, and he . . . almost immediately started threatening me. Not really specific threats, just . . . [¶] . . . things like 'Back down, nigga, back down.'" Parker asked defendant to return the wallet, but defendant "just kept talking trash" and was "trying to be . . . menacing." Parker described defendant as "trying to engage me," that is, "like he wanted to fight."[3] Police arrived, at which point defendant fled. He was apprehended after a short foot pursuit. Parker's wallet was in his pants pocket.

The bystander described the incident as follows: "Mr. Parker fell down on the ground, and his wallet flew a few feet away from him and landed on the ground as well. And then . . . he jumped back up fairly quickly. But in the meantime Mr. Devalle had stepped around and picked up the wallet and backed up a little bit away from him. [¶] . . . [¶] He put the wallet either in his pants or his sweatshirt pocket or something, and then Mr. Parker . . . was saying 'Dude, give me my wallet back.' [¶] . . . [¶] Mr. Devalle was saying, 'What's up, nigga? Do you want to fight?' And he kept saying that repeatedly. [¶] In their exchange back and forth, Mr. Parker said, multiple times, . . . 'No, I don't want to fight, I want my wallet back.' And Mr. Devalle just kept repeating, 'You wanna fight? What's up nigga? You wanna fight?'"[4]

All four of these witnesses— Parker, the bystander, and the officers—thought defendant was either intoxicated or under the influence of something, but none of them smelled alcohol on defendant. The incident was captured on security cameras, and a videotape was played for the jury during testimony of Parker and the bystander.

Defendant testified that before encountering Parker he had been smoking marijuana and drinking most of two pints of vodka. "I kind of blacked out. . . . The last

---

[3]  At another point in his testimony, Parker described defendant as incoherent and acting like "a crazy person talking gibberish."

[4]  The bystander described defendant as "charging sort of towards Mr. Parker [with upraised clenched fists], and then he would step back."

memory I have is [being] on Powell Street. [¶] . . . [¶] The next thing I remember [is] I woke up in jail." Defendant had no recollection of meeting Parker.

A social worker who examined defendant the day after his arrest testified that he appeared hungover. John Mendelson, M.D., testified that he viewed the security camera videotape but did not interview defendant. Mendelson testified about the general effects of the consumption of alcohol on motor and memory impairment. "As everyone knows, the more you drink, the harder it is to remember," and "large amounts of alcohol can completely obliterate the ability to form memories for a period of time." At its most extreme, excessive drinking can produce memory blackout or amnesia. It may not be obvious when a person is suffering such amnesia, and he or she is still able to appear to move and physically function in a normal manner, yet retain no recollection of what occurred. If marijuana is also consumed, it may have "additive" impacts, that is, it "can also cause confusion and paranoia and agitation, and so all those effects would be added to alcohol if people took them together."

## REVIEW

### Defendant's Theft Conviction Is Supported by Substantial Evidence

The statutory elements of grand theft, defendant's sole remaining felony conviction, are (1) the taking of personal property from the owner by the accused; (2) without the owner's consent or a claim of right; (3) with asportation of the property; and (4) with the specific intent to permanently deprive the owner of possession of the property. (*People v. Whitmer* (2014) 230 Cal.App.4th 906, 923.) Defendant contends that substantial evidence of the intent and value elements is lacking. Defendant is incorrect.

As a reviewing court, we are required to "review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "An appellate court must accept logical inferences that the jury might have drawn from the evidence . . . ." (*People v. Combs*

4

(2004) 34 Cal.4th 821, 849.)  And as for the necessary specific intent, it " 'must usually be inferred from all of the facts and circumstances disclosed by the evidence, rarely being directly provable.  [Citations.]  When the evidence justifies a reasonable inference of felonious intent, the verdict may not be disturbed on appeal.' " (*People v. Price* (1991) 1 Cal.4th 324, 462.)

Here, Parker testified that he had just taken out his wallet when he was attacked by defendant.  It would be a reasonable inference for the jury to conclude that upon seeing the wallet defendant determined to obtain it, which he did with the blow to Parker's face that dislodged the wallet from Parker's possession and put it on the ground, where defendant grabbed it.  The first part of defendant's contention must thus be rejected.

With respect to the value element, defendant's argument consists of a single sentence in his brief:  "DeValle's [*sic*] picking up of the wallet was merely petty theft as the grand theft monetary value threshold of $950 was not demonstrated."  The argument is based on a misreading of Penal Code section 487.  It does not specify a "monetary value threshold of $950" applicable in all situations.  Former subdivision (a) sets the threshold at $400 "except as provided in subdivision (b)."  Subdivision (b) fixes the threshold at $250 for three specific types of theft of foodstuffs.  The figure of $950 appears in the fourth exception in subdivision (b), to wit:  "Where the money, labor, or real or personal property is taken by a servant, agent, or employee from his or her principal or employer and aggregates nine hundred fifty dollars ($950) or more in any 12 consecutive month period."  (Pen. Code, § 487, subd. (b)(3).)  The governing provision is subdivision (c)—"Grand theft is theft committed . . . [w]hen the property is taken from the person of another."  Subdivision (c) has no "monetary value threshold."

**There Was No Prejudicial Instructional Error**

The trial court told counsel the jury would be instructed on petty theft as a lesser included offense of the robbery charge.  The jury was instructed with CALCRIM Nos. 1800 and 1801 as follows:

"The defendant is charged with grand theft in violation of Penal Code section 487. To prove the defendant is guilty of this crime, the People must prove that, one, the

defendant took possession of property owned by someone else; two, the defendant took the property without the owner's consent; three, when the defendant took the property, he intended to deprive the owner of it permanently, or deprive it from the owner's possession for so an extended period of time that the owner would be deprived of a major portion of the value or enjoyment of the property and, four, the defendant moved the property even a small distance and kept it for any period of time, however brief.

"If you conclude that the defendant committed a theft, you must decide whether the crime was grand theft or petty theft. Theft of property from a person is grand theft, no matter how much the property is worth.

"Theft is property from the person if the property taken was in the clothing of, on the body of, or in a container held or carried by that person.

"The value of property—the fair market value of the property. Fair market value is the price a reasonable buyer and seller would agree on if the buyer wanted to buy the property and the seller wanted to sell it, but neither was under an urgent need to buy or sell. All other theft is petty theft.

"The People have the burden of proving beyond a reasonable doubt that the theft was grand theft rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of grand theft."

Defendant contends that the trial court "misinstructed on the theft lessers." Specifically, "in instructing the jury on count 1 and its lesser, the court went off track by stating that DeValle was 'charged with grand theft in violation of Penal Code section 487.' Appellant was not charged with grand theft. Instead, grand theft constituted a lesser included offense to the charged offense of robbery in count 1. The court continued its instructions by stating that the jury had to decide 'whether the crime was grand theft or petty theft.' . . . [¶] When instructing on lesser offenses, the court mentioned that 'grand theft is a lesser crime of robbery charged in Count 1' but did not say anything about petty theft being a lesser crime of robbery and grand theft. When instructing on the different intent levels, the court omitted reference to grand or petty theft. The written instructions provided to the jury were identical to the court's oral instructions. Only the verdict forms

6

indicated that petty theft was a lesser included offense to count 1. [¶] . . . [¶] By not instructing the jury either orally or in writing, that petty theft was a lesser to both robbery as charged in count 1 and its lesser offense of grand theft, the jury was deprived of an opportunity to return a not guilty verdict on the lesser offense of grand theft and instead vote guilty on petty theft."

We believe defendant has failed to heed the principle that " ' " ' "the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " ' " (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) That determination demonstrates the absence of prejudice from the court's unfortunate language conveying the erroneous impression that defendant was formally charged with violating Penal Code section 487.

In its instructions, when the court referred to defendant being "charged with" a specific offense, the court referred to a specific count. The absence of such a reference to theft is apparent. At another point in its instructions, the court did direct the jury that "Grand theft is a lesser crime of robbery charged in Count 1" (CALCRIM No. 3518). The verdict forms never designated a violation of Penal Code section 487 as one of the counts against defendant, but only as "lesser-included offense of Count 1," the robbery count. If the jury followed the court's instructions (CALCRIM Nos. 1801 and 3518), as we must assume they did (*Francis v. Franklin* (1985) 471 U.S. 307, 325, fn. 9; *People v. Hovarter* (2008) 44 Cal.4th 983, 1005), they would only consider theft—grand and petty—if they had decided to acquit defendant of the charged offense of robbery. In other words, theft would be considered not as a separate crime but only as one included within robbery. Thus, we conclude that the court's language about defendant being "charged with grand theft" had no prejudicial consequence.

Defendant is mistaken in asserting that the "jury was deprived of an opportunity to return a not guilty verdict on the lesser offense of grand theft and instead vote guilty on petty theft." The jury was expressly instructed with CALCRIM No. 3518 that: "For Counts 1 and 5, you will receive multiple verdict forms." The jury was given a verdict form for "verdict for 2nd lesser-included offense of Count 1: **Petty Theft**" which told

7

the jury "**Only fill-out this page if found <u>Not Guilty</u> of Second Degree Robbery & <u>Not Guilty</u> of Grand Theft Person**."  We note than none of the verdict forms has language describing  Penal Code section 487 as a "charged" offense, as in "as charged in Count __ of the information."  The jury obviously concluded, in accordance with its instructions, that the property of Parker was taken from his person and thus was grand theft.

In light of the totality of these circumstances, we conclude that if the claimed error occurred, it was harmless according to any standard for prejudice.

### A Limited Remand Is Appropriate

Defendant's final contention is that the trial court erroneously believed it had no discretion under Penal Code section 17 to reduce the conviction of Penal Code section 487 from felony to misdemeanor until after judgment, reflected in its statement that "my understanding is that it has to be done after the sentencing, if at all, or else it would be an illegal sentence."  This belief was seconded by the prosecution:  "the Court is correct that if the Court was considering doing it, it would have to do it after sentencing."[5]  However, because the trial court heard argument from both sides on the issue and purported to deny defendant's "request," the Attorney General is agreeable to a remand, but for a more limited purpose:  "Because it is unclear whether the trial court actually exercised its discretion and denied defendant's 17(b) motion, or whether the court believed the motion had to be considered after sentencing, respondent asks this Court to remand to the trial court to clarify its ruling for the record."

---

[5]   And yet, at the time the verdicts were returned, the court inquired of defense counsel: "When do you want to come back for sentencing for Counts 1 through 4 which will give you enough time to . . . prepare a motion for 17(b) . . . *that could be heard on the day of sentencing*?"  (Italics added.)

## DISPOSITION

The order of probation is vacated, and the cause is remanded to the trial court in order that it may either exercise its discretion under Penal Code section 17 to reduce the conviction of Penal Code section 487 from felony to misdemeanor, or state that it declined to exercise that discretion at the time defendant was admitted to probation. If the trial court decides not to reduce the conviction, or if the court states for the record that it had already so decided, the order of probation will stand reinstated and affirmed.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Miller, J.